**PATON, Appellee,**

**v.**

**BRILL, Appellant.**

[Cite as *Paton v. Brill* (1995), 104 Ohio App.3d 826.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APF08–976.

Decided Dec. 14, 1995.

*Michael Miller,* Franklin County Prosecuting Attorney, and *George Speaks,* Assistant Prosecuting Attorney, for appellee.

*Peden, Paley & Associates Co., L.P.A.,* and *John J. Peden,* for appellant.

TYACK, Judge.

Maryana Vaughn Paton and Timothy H. Brill were divorced in Maryland in 1991. Pursuant to the decree of divorce, Brill was ordered to pay the sum of $130 weekly as support for the parties' two daughters. Brill subsequently moved to Ohio.

In January 1992, Paton filed a petition in the Franklin County Court of Common Pleas, Division of Domestic Relations, pursuant to the Uniform Reciprocal Enforcement of Support Act ("URESA"), codified in R.C. Chapter 3115. The petition sought an order from the Ohio court enforcing the initial Maryland child support order. In July 1994, the Franklin County court entered a child support order conforming to the Maryland order.

In October 1994, Paton filed a motion for contempt, claiming that Brill had failed to pay child support. In November, Brill responded with a motion seeking modification of the order in the form of a reduction of his child support obligation. The referee recommended that the motion to modify be dismissed, finding that the Ohio court lacked authority to modify the initial Maryland order. Following the filing of objections to the report and recommendation of the referee, the trial court ultimately overruled the objections and adopted the report of the referee.

Brill (hereinafter "appellant") has timely appealed, assigning five errors for our consideration:

"[I.] The lower court erred in finding *County of San Diego v. Elavsky* decisive to the present case, as it is inapplicable to the current circumstances.

"[II.] The lower court erred in not allowing appellant's motion to modify to go forward and be heard, as the URESA order is separate and independent from the original support order issued by the Maryland divorce court.

"[III.] The lower court has violated appellant's due process rights under the Fourteenth Amendment to the United States Constitution by not allowing appellant to go forward with his motion to modify the URESA order which was issued by the Ohio court.

"[IV.] The lower court has violated appellant's equal protection rights under the Fourteenth Amendment to the United States Constitution by creating a separate class, and discriminating against this class by not allowing both classes access to the court.

"[V.] The lower court has violated appellant's fundamental constitutional right to freedom of travel by not allowing appellant to bring a motion to modify an order issued by an Ohio court."

■ The thrust of the issue before us is whether an Ohio court has jurisdiction to modify the amount of child support ordered pursuant to the original Maryland divorce decree and subsequently ordered pursuant to the Ohio URESA enforcement order. Appreciation of the issue presented requires a rudimentary understanding of the background and policy underlying URESA legislation.

■ URESA is a measure devised to afford a practical method to enforce the legal obligations an obligor/noncustodial parent owes to support his or her child or children where the obligor has left the state in which the child or children reside. See, generally, *Levi v. Levi* (1960), 170 Ohio St. 533, 11 O.O.2d 364, 166 N.E.2d 744. The multistate procedure commences with the filing of a petition in the state in which the obligee/custodial parent resides (the "initiating state"). R.C. 3115.01(B)(2). If a judge of the initiating state's court reviews the petition and determines that a duty of support exists, the proceeding is certified to the state where the obligor resides (the "responding state"). R.C. 3115.01(B)(3) and 3115.12. Finally, the responding court issues an order to enforce in that state the obligor's preexisting support obligation.

In summarily dismissing appellant's motion to modify, the referee and trial court cited, without elaboration, both *San Diego Cty v. Elavsky* (1979), 58 Ohio St.2d 81, 12 O.O.3d 88, 388 N.E.2d 1229, and R.C. 3115.27 as being dispositive of its determination that an Ohio responding court lacks authority to modify the order of Maryland's initiating court.

R.C. 3115.27 provides:

"A responding court shall not stay the proceeding or refuse a hearing under sections 3115.01 to 3115.34, inclusive, of the Revised Code because of any pending or prior action or proceeding for divorce, separation, annulment, dissolution, habeas corpus, adoption, or custody in this or any other state. * * * If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the complaint being heard, *the court must conform its support order to the amount allowed in the other action or proceeding.*" (Emphasis added.)

Another relevant provision is R.C. 3115.28, which reads:

"Any support order issued by a court of this state pursuant to sections 3115.01 to 3115.34, inclusive, of the Revised Code, does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. * * *"

In *Elavsky*, the Supreme Court of Ohio interpreted the above provisions and held, at paragraph one of the syllabus:

"The amount of support ordered in an initial proceeding under the Uniform Reciprocal Enforcement of Support Act (URESA), R.C. Chapter 3115, must conform to the amount determined in a previous divorce case, but once the URESA order is established it is not modified by a subsequent proceeding in the divorce action, unless the divorce court specifically so provides. (R.C. 3115.27 and 3115.28 harmonized.)"

In his first and second assignments of error, appellant points to two alleged errors by the trial court in its construction and application of *Elavsky*. In his first assignment of error, appellant contends that the trial court erred in finding *Elavsky* dispositive of the issue. In his second assignment of error, appellant fixes on language in *Elavsky* which speaks of the URESA proceeding as a "separate, independent action to enforce support obligations." *Id.*, 58 Ohio St.2d at 84, 12 O.O.3d at 90, 388 N.E.2d at 1232. Based upon that language, appellant concludes that these "separate, independent actions" should be governed by the court which issued the order, which governance by a responding URESA court, appellant argues, includes the authority to modify.

With respect to his contentions under his second assignment of error, we are not persuaded by appellant's broad interpretation of the quoted language. We construe the plain meaning of that language to emphasize that the purpose of the "separate, independent" URESA action is "to enforce support obligations." Quite simply, one is an action to establish an original support order, while the separate URESA action is one designed solely to enforce the original order. Our reading of *Elavksy* does not support appellant's broad construction.

We do agree that the situation before us is distinguishable from that presented in *Elavsky*. However, we reject appellant's contention that the distinction results in a resolution sanctioning modification.

As appellant notes, the *Elavsky* syllabus quoted above sets forth two principles. First, the amount of child support ordered by the responding court in an *initial* URESA proceeding must conform to the amount set forth in the order of the initiating court in the original divorce action. Second, once the initial URESA order is established, a subsequent modification proceeding in the divorce action neither automatically nor necessarily modifies the initial URESA order. The initial URESA order is modified only if the divorce court specifically orders modification.

In contrast, the situation before us does not entail a subsequent modification by the original initiating/divorce court. The order appellant seeks to modify is the *initial* URESA order entered by the responding Ohio court. The *Elavsky* syllabus does not resolve this question. We suspect, however, that the distinction here is one without a difference; appellant's attempt to modify the initial Ohio

URESA order (which must, under *Elavsky* and its progeny, mirror the foreign jurisdiction's original support order) appears to be an attempt to circumvent the mandate of *Elavsky* requiring URESA orders to conform to original support orders.

Notwithstanding the trial court's misplaced reliance upon *Elavsky*, all of appellant's arguments in support of modification are nonetheless overruled based upon recently enacted federal legislation which we find to be dispositive of the single issue before us.

On October 20, 1994, which was prior to the filing of appellant's motion, the Full Faith and Credit for Child Support Orders Act, Section 1738B, Title 28, U.S.Code, was enacted. The legislative history explicitly states the bases necessitating enactment of the statute. Congress unequivocally voiced the need to eradicate nationwide problems stemming from the varying laws of multiple jurisdictions involved in child support cases. Specifically, Congress cited the multitude of problems, obstacles, and ill effects caused by diverse state laws. According to the legislative history, Congress found that varying state laws:

"(A) Encourage noncustodial parents to relocate outside the States where their children and the custodial parents reside to avoid the jurisdiction of the courts of such States, resulting in an increase in the amount of interstate travel and communication required to establish and collect on child support orders and a burden on custodial parents that is expensive, time consuming, and disruptive of occupations and commercial activity;

"(B) contribute to the pressing problem of relatively low levels of child support payments in interstate cases and to inequities in child support payments levels that are based solely on the noncustodial parent's choice of residence;

"(C) encourage a disregard of court orders resulting in massive arrearages nationwide;

"(D) allow noncustodial parents to avoid the payment of regularly scheduled child support payments for extensive periods of time, resulting in substantial hardship for the children for whom support is due and for their custodians; and

"(E) *lead to the excessive relitigation of cases and to the establishment of conflicting orders by the courts of various jurisdictions, resulting in confusion, waste of judicial resources, disrespect for the courts, and a diminution of public confidence in the rule of law* * * *." (Emphasis added.) Section 1738B, Title 28, U.S.Code, Congressional findings, statement of policy, and declaration of purposes.

While all of the above are unarguably valid and realistic concerns regarding the nationwide systemic problems of multijurisdictional child support enforcement, we emphasize the final enumerated consideration as being particularly distressing

and applicable to the common situation exemplified here. Attempts to modify another jurisdiction's original support order *necessarily* would result in excessive relitigation and conflicting orders, which in turn would consume countless valuable resources—systemic, financial, and emotional.

While we emphasize the above problems, Congress expressed particular concern with the following results of the varying state laws: failure of state courts to give full faith and credit to the judicial proceedings of other states, deprivation of liberty and property rights without due process of law, burdens on commerce among the states, and harm to the welfare of children, parents, and other custodians. *Id.*

The latter concern expressed by Congress is what we find most critical and, of course, the bottom line which ultimately spurred congressional action: obligor-parents should not and will not be permitted to avoid their financial responsibilities to their children by moving to another jurisdiction and availing themselves of preexisting legal loopholes caused by disparate state laws.

For the above reasons, Congress enacted the Full Faith and Credit for Child Supports Orders Act, Section 1738B, Title 28, U.S.Code, which provides:

"(a) General rule. The appropriate authorities of each State—

"(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and

"(2) *shall not seek or make a modification of such an order except in accordance with subsection (e).*" (Emphasis added.)

As indicated in (a)(2), modifications are explicitly prohibited, unless the exceptions of subsection (e) are satisfied. The limited exceptions are specifically delineated as follows:

"(e) Authority to modify orders. A court of a State may make a modification of a child support order with respect to a child that is made by a court of another State if—

"(1) the court has jurisdiction to make such a child support order; and

"(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any contestant; or (B) each contestant has filed written consent to that court's making the modification and assuming continuing, exclusive jurisdiction over the order."

Appellant clearly does not fall within these restrictive exceptions. Exception (2)(A) is not satisfied since the Maryland court has continuing, exclusive jurisdiction of its child support order because Maryland remains the residence of Paton and the parties' two daughters. Nor is exception (2)(B) satisfied: the record

does not suggest that Paton has filed written consent to the Ohio court's modifying and assuming jurisdiction over the order.

Given the inapplicability of the exceptions, the federal legislation clearly prohibits modification by the responding Ohio court and requires appellant to return to Maryland to seek modification of his child support obligation.

■ We find no constitutional defects in Section 1738B, Title 28, U.S.Code. The statute itself purports to rely upon the Full Faith and Credit Clause of the United States Constitution. The distinctions which result from the operation of the statute are reasonable and are directly related to the furtherance of solving a critical national problem: the failure of a significant number of parents to fulfill their responsibilities to support their children. We see no due process or equal protection problems with the statute. We also see no impermissible burden on the freedom of travel.

As a result, the assignments of error are overruled.

Having overruled the assignments of error, we affirm the judgment of the trial court dismissing appellant's motion seeking modification.

*Judgment affirmed.*

JOHN C. YOUNG and HOLMES, JJ., concur.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.