Linda PORTER

v.

Robert PORTER.

No. 94–533–Appeal.

Supreme Court of Rhode Island.

Nov. 1, 1996.

David M. St. Germain, for Plaintiff.

David S. Cass, Frederick G. Cass, North Kingstown, for Defendant.

## OPINION

LEDERBERG, Justice.

This matter came before the Supreme Court on the appeal of Linda Porter (plaintiff) from an order of the Family Court that dismissed her motion that sought to adjudge her former husband, Robert Porter (defendant), in contempt and that sought to modify his child-support obligations. For the reasons stated below, we sustain the appeal and reverse the order of the trial justice. The facts and procedural history relevant to our holding are as follows.

### Facts and Procedural History

On August 5, 1982, a final divorce decree was entered in the Family Court in Providence, Rhode Island, terminating the marriage of Robert and Linda Porter. The decree awarded custody of the couple's two minor children, born in 1977 and 1981, to plaintiff but made no provision for child support. In 1989, plaintiff initiated a proceeding in Family Court, seeking child support from defendant. The parties agreed that by 1989 defendant had established residence in Massachusetts, where he continued to reside for all subsequent times relevant to this case. The defendant appeared *pro se* at the 1989

hearing on plaintiff's motion for support and was ordered to pay $250 per month in child support plus one-half of the children's reasonable and necessary uninsured medical and dental expenses. The defendant did not contest the Family Court's jurisdiction at the 1989 hearing.

In 1990, plaintiff and the children moved from Rhode Island to Florida, where they resided until returning to Rhode Island in 1994. In April 1994, plaintiff filed with the Family Court the motion that is the subject of this appeal. The defendant received service of the motion at his home in Massachusetts on May 14, 1994. In her motion, plaintiff requested that defendant be adjudged in contempt for failing to pay, as required by the 1989 order, child support and medical and dental expenses in the amount of $2,236. She also alleged that because circumstances had changed since the 1989 order, modification of defendant's child-support obligations was warranted. In response to plaintiff's motion, defendant filed a motion to dismiss, framed as three separate motions, in which he argued that (1) the Family Court lacked personal jurisdiction over him, (2) process was insufficient because of the absence of a supporting financial affidavit, and (3) the form of plaintiff's pleading was defective for a motion to modify child support. On July 18, 1994, the Family Court granted defendant's motions without comment, and plaintiff appealed to this Court. We assume from the trial justice's use of the plural "motions" that all three of defendant's motions to dismiss were granted. At any rate, because the Family Court did not specify the reasons for its dismissal of plaintiff's motion and because no transcript of the hearing on defendant's motions to dismiss has been provided, we shall address all three of defendant's proffered grounds for dismissal.

### Jurisdiction of the Family Court

■ The defendant argued that the four-year absence, from 1990 to 1994, of the parties and their children from this state terminated the Family Court's jurisdiction over this matter. The defendant further argued that his own lack of contact with Rhode Island since 1990 precluded any renewed exercise of personal jurisdiction over him, *see*

G.L.1956 § 9–5–33, and that plaintiff's only recourse was through the provisions of the Uniform Reciprocal Enforcement of Support Act (URESA), G.L.1956 chapter 11 of title 15. Because we disagree with defendant's contention that the removal of the parties from this state terminated the Family Court's jurisdiction, we need not consider his contacts with this state subsequent to the 1989 order.

■ Rhode Island's long-arm statute, G.L. 1956 § 9–5–33(a), confers on Rhode Island courts the power to assert personal jurisdiction over nonresident individuals. This statute provides that "every individual not a resident of this state * * * that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island * * * in every case not contrary to the provisions of the constitution or laws of the United States." In other words, courts of this state "may exercise jurisdiction over persons up to federal constitutional due process limits as delineated by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny." *Nicholson v. Buehler*, 612 A.2d 693, 696 (R.I.1992).

■ Both the Legislature and this Court have recognized that the Family Court, although a statutory court, has inherent power to punish contempt of its authority, *State v. Price*, 672 A.2d 893 (R.I.1996); *see* G.L.1956 §§ 8–10–38, 8–6–1, such as would occur if a party has failed to pay child support pursuant to a court order. *See, e.g., Adam v. Adam*, 624 A.2d 1093 (R.I.1993). Moreover, the Legislature has specifically conferred upon the Family Court continuing jurisdiction to modify child-support orders:

"After a decree for support has been entered, the court may from time to time upon the petition of either party review and alter its decree relative to the amount of support and the payment thereof, and may make any decree relative thereto which it might have made in the original suit." G.L.1956 § 15–5–16.2(c).

Thus, after the Family Court has granted a dissolution, it retains jurisdiction to enforce and modify support for minor children of the

divorced parties, irrespective of whether such support has been addressed in the final decree. *Calcagno v. Calcagno,* 120 R.I. 723, 728, 391 A.2d 79, 82 (1978). This jurisdiction continues "notwithstanding the absence of the other spouse from this jurisdiction." *Id.*

The four-year absence of plaintiff spouse in the case before us does not affect this analysis because a plaintiff, by voluntarily submitting to the forum state's jurisdiction, is not required to have minimum contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779, 104 S.Ct. 1473, 1480–81, 79 L.Ed.2d 790, 800 (1984). It follows that the Family Court's original exercise of jurisdiction over the 1989 child-support proceeding, which defendant has not challenged, was not automatically terminated by the parties' establishing residence in other jurisdictions, *See Weber v. Harper,* 481 N.E.2d 426, 428 (Ind.Ct.App.1985) (court retained jurisdiction over custody and support where both parties, as well as their children, no longer resided in state). Because defendant has identified no other factor that could be said to terminate jurisdiction, such as modification of the order by a court of another state, *see* Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B(d), *post,* we conclude that the Family Court retains jurisdiction to entertain plaintiff's motion to adjudge in contempt and to modify.

The provisions of URESA are of no avail to defendant. As defendant acknowledged, URESA states that "[t]he remedies provided are in addition to and not in substitution for any other remedies." G.L.1956 § 15–11–3. The existence or nonexistence of a remedy for plaintiff under URESA thus has no bearing on whether a remedy is available to plaintiff under state law independently of URESA. The defendant's reliance on the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, was likewise misplaced. The PKPA was enacted to prevent jurisdictional conflicts in child-custody disputes and, in particular, to deter parents from abducting children for the purpose of obtaining custody awards in other states. *Rees v. Reyes,* 602 A.2d 1137, 1140 (D.C.Ct. App.), *cert. denied,* 503 U.S. 991, 112 S.Ct. 1686, 118 L.Ed.2d 400 (1992). Its jurisdic-

tional provisions are not applicable to interstate child-support disputes.

More relevant is the Full Faith and Credit for Child Support Orders Act (Child Support Act or the act), 28 U.S.C. § 1738B. Congress enacted this act in 1994 to facilitate enforcement of child-support orders among states, to discourage interstate controversies over child support, and to avoid jurisdictional competition among state courts in establishing child-support orders. Pub.L. 103–383 § 2(c), Oct. 20, 1994, 108 Stat. 4064; *In re Marriage of Lurie,* 33 Cal.App.4th 658, 39 Cal.Rptr.2d 835, 845 (1995). The act requires state authorities to enforce other states' child-support orders that are consistent with the act and to modify such orders only in accordance with the act. 28 U.S.C. § 1738B(a). Because the instant case involves a Rhode Island state court enforcing its own order that has not been modified by another state, the act does not control. Nonetheless, the provisions of the Child Support Act are highly relevant to the instant appeal because they delineate the conditions under which other states must accord full faith and credit to child support orders emanating from this state. *See Paton v. Brill,* 104 Ohio App.3d 826, 663 N.E.2d 421, 424 (1995).

The act provides for the continuing and exclusive jurisdiction of a court making a child support order, when certain conditions are met:

> "A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any contestant unless the court of another State, acting in accordance with subsection (e), has made a modification of the order." 28 U.S.C. § 1738B(d).

The defendant does not dispute that Rhode Island is currently the residence of plaintiff and the children and that no other state has modified the original order. In such a case the unambiguous language of subsection (d) provides that the Family Court retains jurisdiction over this matter, despite the intervening absence of the parties and their children, unless the modification provisions of subsec-

tion (e) apply. Specifically, the provisions of subsection (e) allow a court to modify a child-support order from another state in case

"(1) the court has jurisdiction to make such a child support order; and

"(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any contestant; or

(B) each contestant has filed written consent to that court's making the modification and assuming continuing, exclusive jurisdiction over the order." 28 U.S.C. § 1738B(e).

■■■ Although "continuing, exclusive jurisdiction" is not defined in the Child Support Act, we interpret the phrase as drawing a distinction between "continuing jurisdiction" and "exclusive jurisdiction." The jurisdiction of the court originally issuing a child-support order may continue beyond the removal of parties from the state but the jurisdiction may no longer be exclusive under the act. That is, the jurisdiction of the originating state continues even after the contestants and their children leave the state, until such time as a new state of residence modifies the order. If, before such a modification occurs, a contestant or a child returns, the originating state's jurisdiction is again exclusive and no longer subject to modification by another state under the act, save by agreement of the parties, 28 U.S.C. § 1738B(e)(2)(B). Thus, subsection (d) provides for the continuing, exclusive jurisdiction of the originating state if a child or a contestant resides there, whether continuously or upon return, unless a court of another state has modified the order in accordance with subsection (e).

Subsection (f) of the Child Support Act supports this interpretation. This subsection provides,

"A court of a State that no longer has continuing, exclusive jurisdiction of a child support order may enforce the order with respect to nonmodifiable obligations and unsatisfied obligations that accrued before the date on which a modification of the order is made under subsection (e)." 28 U.S.C. § 1738B(f).

Subsection (f), then, directs that a state's "continuing, exclusive jurisdiction" may terminate only in the event that a different state modifies the order pursuant to subsection (e), which event has not occurred in this case. Moreover, subsection (f) plainly allows for retention of jurisdiction in the first state, here Rhode Island, to enforce unsatisfied obligations, which plaintiff sought to do through her motion to adjudge in contempt, even when the parties and their children have left the state.

Consequently, we hold that the Family Court erred in granting defendant's motion to dismiss on the basis of lack of jurisdiction. The Family Court's jurisdiction was not terminated by the four-year absence of the parties and their children from this state.

### Sufficiency of Process

■■■ The defendant next argued that process was insufficient because plaintiff failed to serve, along with the motion to modify child-support obligations, a supporting affidavit detailing her current assets, liabilities, income, and expenses, as required by Rule 64A(b) of the Family Court Rules of Procedure for Domestic Relations. The plaintiff conceded that she failed to serve the affidavit but argued that defendant has demonstrated no prejudice resulting from this failure.

Rule 64A, "Post final judgment relief," provides in part:

"(a) *Service.* A party seeking post final judgment relief shall serve a summons and complaint in the manner prescribed in subdivision (d) or (e) of Rule 4 upon the party against whom relief is sought.

"(b) *Statement of Needs.* Complaints for modification of alimony or support obligations made pursuant to this rule shall be accompanied by a supporting affidavit containing a statement of the applicant's current assets, liabilities, income and expenses. A party who opposes the complaint shall file an affidavit containing a statement of his or her current assets, liabilities, income and expenses."

This rule is mandatory and applies to complaints for modification of support obligations. The Reporter's Notes to the essentially identical provision found in Rule 64 of

the Family Court Rules of Procedure for Domestic Relations, entitled "Temporary support, custody, legal fees—Expedited hearings," set forth the purpose of the requirement of an affidavit:

> "This provision will prove useful by placing before the Court in written form the basic information needed to dispose of the application. It also provides the parties with the data they need in order to participate with maximum effectiveness in a hearing on the motion. Moreover, it provides a form of early discovery to the parties that might prove helpful in working out a settlement agreement."

Although plaintiff failed to serve the affidavit required by Rule 64A(b), such failure should not defeat her motion to modify. Rather, the trial justice should direct plaintiff to file the affidavit before the Family Court addresses her motion to modify defendant's child-support obligations. *See* Form 20, Appendix of Forms, Rules of Procedure for Domestic Relations.

■ We note, in any case, that Rule 64A(b) is not applicable to motions to adjudge in contempt. Consequently, we are of the opinion that this aspect of plaintiff's motion should have survived defendant's motion to dismiss on the basis of insufficiency of process, and we hold that the trial justice erred in dismissing plaintiff's motion to adjudge defendant in contempt for failing to carry out his obligations under the court order.

### Form of Pleading

■ Finally, defendant argued that plaintiff's pleading was defective because it was not in the form of a complaint. Rule 64A(a) provides that "[a] party seeking post final judgment relief shall serve a summons and complaint in the manner prescribed in subdivision (d) or (e) of Rule 4 upon the party against whom relief is sought." Insofar as plaintiff's motion sought to adjudge defendant in contempt, the form of plaintiff's request was proper. *See* Rule 7 of the Rules of Procedure for Domestic Relations. The plaintiff's request to modify child support, however, was a request for post-final-judgment relief, a request that should have been filed in the form of a complaint. *See* Rules 7(a)(1) and 64A(a).

■ This violation of the Rules of Procedure for Domestic Relations was not, however, of a magnitude sufficient to warrant dismissal of the plaintiff's motion to modify. *Antone v. Vickers*, 610 A.2d 120, 124 (R.I. 1992) (trial justice correct in addressing substance, not form, of pleading). The purpose of Rule 64A(a) is to "assure that the party against whom relief is sought is on notice of the proceeding." Reporter's Notes to Rule 64A. The defendant conceded that he did receive service of the plaintiff's motion. Moreover, the substantive portions of the plaintiff's motion complied with the requirements of a claim for relief. *See* Rule 8(a) of Rules of Procedure for Domestic Relations. Consequently, we conclude that the trial justice erred in dismissing the plaintiff's motion on the basis of defective pleading.

In summary, therefore, this Court holds, first, that the trial justice erred in dismissing the plaintiff's motion on the basis of lack of jurisdiction. Second, we hold that the trial justice erred in dismissing, on the basis of insufficiency of process, the plaintiff's motion to modify the defendant's child-support obligations and in dismissing the plaintiff's motion to adjudge in contempt. Finally, we hold that the trial justice erred in dismissing the plaintiff's motion on the basis of defective pleading. Thus, the plaintiff's appeal is sustained and the order appealed from is reversed. We remand this case and the papers therein to the Family Court for proceedings consistent with this opinion.

MURRAY, J., not participating.