Luke A. ARMENTROUT, Jr.,

v.

Marie G. ARMENTROUT.

No. 96–176–M.P.

Supreme Court of Rhode Island.

March 20, 1997.

William Y. Chaika, Providence, for Plaintiff.

Jeffrey H. Garabedian, Kenneth J. Macksoud, Providence, for Defendant.

## OPINION

PER CURIAM.

We issued a writ of certiorari in this matter to review a Family Court order (1) denying a contempt motion filed against a nonresident party to a Rhode Island divorce decree and (2) refusing to entertain a motion to amend the contempt motion to add a request to reinstate alimony on the grounds that the court lacked personal jurisdiction over the movant's former spouse. The Family Court order denied the motion of the petitioner, Marie G. Armentrout (Marie), to adjudge her former husband, respondent Luke A. Armentrout, Jr. (Luke), in contempt; it also denied her motion to amend her contempt motion to add a request for the payment of alimony; and finally, it granted Luke's motion to dismiss Marie's contempt and amendment motions. We directed the parties to appear and show cause why the issues raised in this petition should not be summarily decided. Having reviewed the memoranda submitted by the parties and considered their oral arguments, we conclude that cause has not been shown. We therefore proceed to decide this matter without further briefing or argument.

Marie and Luke divorced on May 23, 1984. The final divorce judgment required Luke to pay $50 alimony per week for a period of ten years. However, in 1990 Luke filed a complaint to suspend his alimony obligation, and a Rhode Island Family Court justice rendered a written decision granting this request. The Family Court then sent duplicate originals of the decision to both parties. However, it never entered a written order implementing its decision. Nonetheless, pursuant to the court's decision, Luke ceased making alimony payments.

In June 1994 Marie learned that Luke, who was then living in Ohio, would be visiting Rhode Island to attend their daughter's wedding. Accordingly, on June 16, 1994, Marie filed a motion to adjudge Luke in contempt, arguing that without a signed order suspending the alimony payments, Luke had not been excused from his duty to pay alimony. On June 17, 1994, while he was in Rhode Island attending his daughter's wedding, Marie caused Luke to be served personally with a summons and a contempt motion. In response, Luke entered a "special appearance" to contest Marie's contempt motion and filed his own motion to dismiss the contempt proceeding as frivolous in light of the court's August 1990 decision suspending his alimony obligation. Thereafter, Marie moved to amend her contempt motion to add a request that Luke's obligation to pay alimony be made permanent. She caused Luke to be served personally in Ohio with a summons for relief after final judgment and with the amendment motion. She also caused his local counsel to be served by mail in Rhode Island. Luke again entered a "special appearance" and made a motion to dismiss Marie's amendment motion for lack of personal jurisdiction.

In its decision the Family Court characterized Marie's amendment motion as one requesting the reinstatement of alimony—"a completely different motion * * * requir[ing] personal service within this jurisdiction." Because Luke had sought and obtained a suspension of alimony in the Rhode Island Family Court in 1990, Marie argued that the Family Court had continuing jurisdiction over him. However, the court found that the personal service on Luke at his daughter's wedding was ineffective because Marie had served him with a contempt motion notwithstanding the 1990 court decision suspending Luke's obligation to pay alimony. The Family Court justice believed that Marie was not, in fact, seeking to have Luke adjudged in contempt but rather was attempting to show a change in circumstances sufficient to reestablish alimony. According to the Family Court, such a request required personal service of the amendment motion within this jurisdiction. Thus the court denied and dismissed Marie's motions and granted Luke's dismissal motion.

Although transitory, Luke's physical presence in this state at the time of service supports the exercise of personal jurisdiction over him. See Nicholson v. Buehler, 612 A.2d 693, 697 (R.I.1992) ("physical presence within a forum may alone support the assertion of jurisdiction"); see also Lucini v. Mayhew, 113 R.I. 641, 648, 324 A.2d

663, 666 ("[t]he jurisdiction of this state in a case involving a Rhode Island defendant is based solely on this state's power over the individual and his consequent accountability in its courts"), *amended by* 113 R.I. 947 (1974). After the Family Court obtained personal jurisdiction over Luke, Marie's motion to amend her contempt proceeding to include a request for alimony of indefinite duration did not require additional personal service pursuant to Rule 64A of the Rules of Procedure for Domestic Relations. *See also* R.P. Dom. Rel. 5.

 In any event, after an alimony decree has been entered, the Family Court has continuing jurisdiction to modify an alimony order even when one of the parties is absent from the jurisdiction:

> "After a decree for alimony has entered, the court may from time to time upon the petition of either party review and alter its decree relative to the amount of the alimony and the payment thereof, and may make any decree relative thereto which it might have made in the original suit." General Laws 1956 § 15–5–16(c)(2).

*Cf. Porter v. Porter*, 684 A.2d 259, 262 (R.I. 1996) (discussing a similar statute relating to modification of a child-support decree and stating that "the Family Court's original exercise of jurisdiction over the * * * support proceeding * * * was not automatically terminated by the parties' establishing residence in other jurisdictions"). Rule 64A(a) of the Rules of Procedure for Domestic Relations Procedure provides that "[a] party seeking post final judgment relief shall serve a summons and complaint in the manner prescribed in subdivision (d) or (e) of Rule 4 upon the party against whom relief is sought." In the absence of a factor terminating jurisdiction, *see Porter*, 684 A.2d at 262, Luke was subject to the continuing jurisdiction of the courts of this state pursuant to § 15–5–16(c)(2). Thus Marie properly served her amendment motion upon Luke in Ohio. *See* R.P. Dom. Rel. 64A(a) & 4(e)(1).

Notwithstanding the Family Court's error in concluding that no personal jurisdiction existed over Luke, we affirm the court's order denying Marie's contempt motion. Despite the absence of a written order imple-

menting the Family Court's decision to suspend alimony payments, we believe that Luke was not guilty of contempt in failing to continue alimony payments after the court's decision had relieved him of that obligation. For the Family Court to have held Luke in contempt, it would have had to have concluded that he was "disregard[ing] a valid court order in favor of his own notion of justice." *Pontbriand v. Pontbriand*, 622 A.2d 482, 486 (R.I.1993). However, Luke's conduct was just the opposite: far from favoring his own notion of justice, he was abiding by a legitimate decision of the Family Court that had relieved him of any alimony obligation. We conclude, therefore, that the Family Court properly denied Marie's motion to adjudge Luke in contempt.

Consequently, Marie's petition for certiorari is granted in part and denied in part. Because of the erroneous ruling on personal jurisdiction, the Family Court never reached the merits of Marie's motion to add a request for alimony of indefinite duration. We therefore vacate the order denying that motion and remand this matter to the Family Court for the entry of an order, nunc pro tunc, suspending Luke's obligation to pay alimony pursuant to the Family Court's 1990 decision and for a hearing to determine whether Marie's motion to amend should be allowed and, if so, whether alimony should be reinstated.