This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant David Smith has appealed from an order of the Summit County Court of Common Pleas, Domestic Relations Division, granting judgment against him for child support arrearages in the amount of $52,083.22. This Court affirms.
 I
{¶ 2} In October 1976, David Smith ("Husband") and Plaintiff-Appellee Judy Stauffer ("Wife") were married. Twin daughters Julie and Jaclyn were born as issue of the marriage in 1977. One year later, the parties were divorced by an order of the Summit County Court of Common Pleas, Domestic Relations Division ("trial court"). Thereafter, the parties reconciled and a third child was born in 1981. Later that year, the parties remarried.
{¶ 3} The parties subsequently separated and obtained a divorce in circuit court in Manatee County, Florida, in 1990. The parties' settlement agreement, which was incorporated into the final divorce decree, provided that Husband was to pay child support in the amount of $70 per week per child, for a total of $210 per week. Wife remained in Florida with the three children, and Husband returned to Ohio.
{¶ 4} Because of child support arrearages, Wife signed a petition seeking enforcement of the Florida court's support award, which was filed in the Summit County Juvenile Court ("juvenile court"). Pursuant to Wife's petition, the juvenile court issued an order in 1994 which established arrearages from November 9, 1990 to July 22, 1992, in the amount of $17,671.07. The juvenile court's order also modified Husband's monthly support obligation from $70 per child to $146 per child, effective July 23, 1992. In 1995, the juvenile court granted Wife a judgment for past due support in the amount of $10,033.35 for the period July 23, 1992 through September 25, 1995.
{¶ 5} In August 1996, the trial court issued an order scheduling a hearing to determine whether support for Julie and Jaclyn should terminate due to their emancipation. In September 1996, the trial court journalized an order terminating support for the twins and granting judgment to Wife in the amount of $26,357.06 for Husband's support arrearages. Both parties have stipulated that this order was entered in error and is of no force and effect, because it calculated Husband's support obligation pursuant to the parties' first divorce in Summit County in 1978. Both parties agree that Husband's support obligation under the first divorce terminated as a matter of law when the parties remarried in 1981.
{¶ 6} In 1999, the Florida circuit court entered an order finding Husband in arrears for child support in the amount of $53,426.76, and ordered Husband to pay $250 per month toward this amount until the obligation was fully satisfied.
{¶ 7} In August 2000, the Child Support Enforcement Agency ("CSEA") filed a notice of registration of the Florida order in the Summit County Court of Common Pleas, Domestic Relations Division. Husband filed a motion to contest the validity or enforceability of the order, and an evidentiary hearing on the matter was held on December 8, 2000. The parties thereafter submitted briefs setting forth their positions on the validity and enforceability of the registered order and the amount of arrearages it established.
{¶ 8} In August 2001, the magistrate entered a decision granting Wife $52,083.22 in arrearages for past due child support through December 31, 2000 pursuant to the Florida support order. The magistrate also ordered Husband to pay $484.50 per month toward his support arrearages. Two days later, the court entered an order adopting the magistrate's decision. Husband then filed objections to the magistrate's decision. The trial court thereafter overruled Husband's objections, and again adopted the decision of the magistrate. Husband has timely appealed, asserting two assignments of error.
 II Assignment of Error Number One "THE TRIAL COURT ERRED BY FAILING TO RECOGNIZE THE SUMMIT COUNTY COURT OF COMMON PLEAS' MODIFICATIONS OF CHILD SUPPORT."
{¶ 9} In his first assignment of error, Husband has argued that the trial court erred by giving effect to the Florida court's 1999 order with respect to arrearages. Husband has contended that, instead, the court should have enforced the juvenile court's orders for arrearages in the amounts of $17,671.07 for November 1990 through July 1992, and $10,033.35 for July 1992 through September 1995.
{¶ 10} "It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. To the extent that Husband challenges the lower court's conclusion that the juvenile court lacked subject matter jurisdiction to modify Husband's support obligations, however, we review that legal determination de novo. McClurev. McClure (1997), 119 Ohio App.3d 76, 79.
{¶ 11} At the time Wife filed her petition to enforce the Florida court's child support order, Ohio's version of the Uniform Reciprocal Enforcement of Support Act ("URESA") was still in effect.[1] The purpose of URESA was to provide a practical method to enforce the child support obligations of an obligor who has left the state in which the children reside. Paton v. Brill (1995), 104 Ohio App.3d 826, 829.
 "The multistate [URESA] procedure commences with the filing of a petition in the state in which the obligee/custodial parent resides (the `initiating state'). R.C. 3115.01(B)(2). If a judge of the initiating state's court reviews the petition and determines that a duty of support exists, the proceeding is certified to the state where the obligor resides (the `responding state'). R.C. 3115.01(B)(3) and 3115.12. Finally, the responding court issues an order to enforce in that state the obligor's preexisting support obligation." Paton, 104 Ohio App.3d at 829.
{¶ 12} Under URESA, two separate mechanisms were available for the enforcement of foreign support orders: the "traditional" and the "formal registration" methods. McClure, 119 Ohio App.3d at 79-80. The traditional URESA proceeding was based on the language of R.C. 3115.27 and R.C.3115.28, and the Ohio Supreme Court's harmonization of the two statutes in San Diego v. Elavsky (1979), 58 Ohio St.2d 81. Walker v. Amos (2000),140 Ohio App.3d 32, 37-38. R.C. 3115.27 provided, in pertinent part:
 "A responding court shall not stay the proceeding or refuse a hearing under [R.C. 3115.01 to R.C. 3115.34, inclusive] because of any pending or prior action or proceeding for divorce, separation, annulment, dissolution, habeas corpus, adoption, or custody in this or any other state. *** If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the complaint being heard, the court must conform its support order to the amount allowed in the other action or proceeding."
{¶ 13} R.C. 3115.28 provided, in pertinent part:
 "Any support order issued by a court of this state pursuant to [R.C. 3115.01 to R.C. 3115.34, inclusive] does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court."
{¶ 14} In interpreting these statutes, the Ohio Supreme Court specified that "[t]he amount of support ordered in an initial proceeding under [URESA] must conform to the amount determined in a previous divorce case[.]" Elavsky, 58 Ohio St.2d 81 at paragraph one of the syllabus. In a traditional URESA proceeding, therefore, Ohio courts lack subject matter jurisdiction to modify support obligations established in the initiating court's orders. Walker, 140 Ohio App.3d at 38.
{¶ 15} The second method of enforcing foreign support orders under URESA is the obligee's "additional remedy" of formally registering the initiating state's order in an Ohio court. R.C. 3115.32(A). R.C. 3115.32(G) sets forth the effect of such a registration:
 "Upon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner."
{¶ 16} Under this registration proceeding, the "responding state actually adopts an initiating state's support order as its own judgment by virtue of formal registration in the responding state." McClure,119 Ohio App.3d at 79-80. "[S]everal courts have interpreted R.C. 3115.32(G) as authorizing Ohio courts to increase the support obligation set forth in the initiating court's order, provided the required changed circumstances are established, since it has been transformed into an Ohio support order." Id. at 80; see, also, Walker, 140 Ohio App.3d at 39
("When a support order is registered [pursuant to R.C. 3115.32], an Ohio court has the jurisdiction to modify it.").
{¶ 17} In the case sub judice, the trial court determined that there was no evidence that Wife pursued formal registration of the Florida court order pursuant to the procedures set forth at R.C.3115.32(E), which include filing three copies of the order and a copy of Florida's reciprocal enforcement of support act. The court concluded that the petition filed on Wife's behalf in juvenile court was a traditional URESA action, and the juvenile court was therefore without jurisdiction to modify Husband's support obligation. We agree.
{¶ 18} Husband has argued that Wife accepted the juvenile court's jurisdiction by signing the URESA petition, which included the handwritten statement: "Any relief deemed just and reasonable by court or jurisdiction." Husband has also contended that Wife acceded to the juvenile court's jurisdiction by submitting income information (including her 1991 tax return) with her URESA petition; according to Husband, Wife should have known that the court would use such information to re-calculate his support obligation. Husband has maintained that Wife's consent to the juvenile court's jurisdiction was further manifested by the URESA petition's statement of Husband's arrearages as $17,671.07 as of July 22, 1992, which was less than the total owed by Husband under the Florida support order.
{¶ 19} In support of his arguments, Husband has cited Wyatt v.Wyatt (1992), 65 Ohio St.3d 268, and Paton v. Brill (1995),104 Ohio App.3d 826. In Wyatt, the court concluded that Ohio must accord full faith and credit to an Alaska court's determination that a child support obligee consented to settlement of her URESA claim, and the obligee's attempt to re-litigate the issue of support in Ohio was therefore barred by res judicata. Wyatt, 65 Ohio St.3d at 270-271. InPaton, the court explained that the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"), Section 1738B, Title 28, U.S. Code, enacted in October 1994, prohibits a court of one state from modifying a child support order issued by a court of another state unless:
 "`(1) the court has jurisdiction to make such a child support order; and
 "`(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any contestant; or (B) each contestant has filed written consent to that court's making the modification and assuming continuing, exclusive jurisdiction over the order.'" Paton, 104 Ohio App.3d at 832, quoting Section 1738B(e), Title 28, U.S.Code.
{¶ 20} The arguments advanced by Husband fail to demonstrate that Wife consented to the juvenile court's assumption of jurisdiction to modify the support order issued by the Florida court. On the contrary, the record shows that Wife was not even aware that the juvenile court might exercise jurisdiction to modify Husband's support obligation. The child support enforcement transmittal request from the Florida court provided that "The Responding Jurisdiction Should Provide All Appropriate Services Including: Registration of Foreign Support Order: For Enforcement Only." The boxes indicating "For Modification" and "For Modification and Enforcement" were not checked.
{¶ 21} At the December 8, 2000 hearing, Wife testified that her purpose in signing the petition was to enforce the Florida order, and not to confer jurisdiction to modify the order upon Ohio courts. When asked at the hearing what the phrase "[a]ny relief deemed just and reasonable by court or jurisdiction" means, Wife testified that she did not know. The trial court found that this phrase was written by staff from the Florida CSEA, and that Wife's only participation in the URESA action was her signing of the petition. This finding is supported by Wife's testimony that the URESA petition was already filled out when she signed it, and she was told that "everything had to go through those case workers."
{¶ 22} Husband has also argued that Wife implicitly agreed to the juvenile court's modification of the support order by failing to contest the juvenile court's 1994 modification until 1999. Husband has further asserted that Wife submitted to the jurisdiction of Ohio courts in 1996, when the trial court issued the order scheduling a hearing to determine whether the order setting support for Julie and Jaclyn pursuant to the parties' first divorce should terminate.
{¶ 23} Consistent with Wife's testimony at the hearing, however, the trial court found that Wife did not participate in and was not even provided notice of the juvenile court's hearings on the issue of child support. In addition, the trial court's order following the hearing on termination of support for Julie and Jaclyn in 1996 stated that "[Wife] did not appear nor was she represented by legal counsel." Moreover, even if Wife had received notice of the Ohio courts' scheduled hearings, requiring Wife to travel from Florida to Ohio to contest modification of the Florida support order that Wife only registered to enforce in Ohio would be contrary to URESA's express purpose of "improv[ing] and extend[ing] by reciprocal legislation the enforcement of duties of support." R.C. 3115.01(A). We agree with the trial court's determination that "[i]t is inconceivable that URESA would require [Wife] to travel from Florida to defend a child support modification case filed under the standard URESA petition completed by [Wife] for the sole purpose of collecting unpaid support."
{¶ 24} Consequently, the trial court properly determined that the juvenile court was without jurisdiction to modify the Florida court's establishment of Husband's support obligation. Husband's first assignment of error is not well taken.
 Assignment of Error Number Two
{¶ 25} Husband has asserted two components to his second assignment of error. We will address each in turn.
 "A. THE TRIAL COURT ERRED WHEN IT DECIDED THAT [HUSBAND] WAS SUBJECT TO THE FLORIDA COURT ARREARAGES FOR THE ENTIRE TIME PERIOD OF CHILD SUPPORT PAYMENTS OWED AND NOT JUST FOR THE TIME PERIOD PRIOR TO THE MODIFICATION BY THE OHIO COURT ORDER."
{¶ 26} In part one of his second assignment of error, Husband has argued that the trial court erred in enforcing the Florida court's determination of arrearages for the duration of time Husband owed support, rather than giving prospective effect to the juvenile court's modification of the order. Husband has contended that the Florida order should only be enforced against Husband through the date that the juvenile court issued its order modifying his support obligation.
{¶ 27} As authority for his position, Husband has relied on Dunnv. Dunn (2000), 137 Ohio App.3d 117. In Dunn, the court applied the FFCCSOA to determine the enforceability of two conflicting child support orders issued by courts of California and Ohio. Citing Section 1738B(d), Title 28, U.S. Code, the court found that California obtained exclusive, continuing jurisdiction over the issue of support because neither of the parties resided in Ohio.
{¶ 28} Section 1738B(d), Title 28, U.S. Code provides:
 "A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order."
{¶ 29} In the case sub judice, the juvenile court did not obtain continuing, exclusive jurisdiction over Husband's child support obligation, because the juvenile court orders were not made "consistently with this section." Id. Section 1738B(c), Title 28, U.S. Code defines child support orders made "consistently with this section" as follows:
 "A child support order made by a court of a State is made consistently with this section if —
 "(1) a court that makes the order, pursuant to the laws of the State in which the court is located and subsections (e), (f), and (g) —
 "(A) has subject matter jurisdiction to hear the matter and enter such an order; and
"(B) has personal jurisdiction over the contestants; and
 "(2) reasonable notice and opportunity to be heard is given to the contestants."
{¶ 30} As set forth in our discussion of Husband's first assignment of error, the juvenile court did not have authority to modify Husband's support obligation as set by the Florida court pursuant to Section 1738B(e), Title 28, U.S. Code, because Wife and the children continued to live in Florida, and Wife did not consent to the juvenile court's jurisdiction to modify the order and assume exclusive, continuing jurisdiction over it. As a result, the juvenile court's modification was not "made consistently with" Section 1738B(e), Title 28, U.S. Code, and the juvenile court never acquired authority to modify the Florida support order. The trial court therefore did not err in failing to arrest enforcement of the Florida order at the time the juvenile court issued its modification of Husband's support obligation.
 "B. THE TRIAL COURT ERRED WHEN IT HELD THAT THE URESA ACTION FILED BY [WIFE] DID NOT MEET THE EXCEPTIONS TO MODIFICATION AS A TRADITIONAL URESA ACTION AFTER THE AUGUST 9, 1996 HEARING AND ORDER."
{¶ 31} In part two of his second assignment of error, Husband has argued that the trial court erred by failing to give effect to the juvenile court's modified order beginning August 9, 1996. Husband has contended that on that date, the trial court held a hearing to determine the enforceability of the conflicting support orders issued by the juvenile court and the Florida court pursuant to R.C. 3115.09(C), Ohio's codification of the UIFSA. That statute provides:
 "If two or more child support orders have been issued for the same obligor and child and the obligor or the individual obligee resides in this state, a party may request a tribunal of this state to determine which order to recognize as controlling pursuant to division (B) of this section. The request must be accompanied by a certified copy of every support order in effect. The requesting party shall give notice of the request to each party whose rights may be affected by the determination." R.C. 3115.09(C).
{¶ 32} The record, however, does not support Husband's assertion that the trial court's hearing was held pursuant to R.C. 3115.09(C). As we explained supra, the trial court issued an order in August 1996 scheduling a hearing to determine whether the order setting support for Julie and Jaclyn pursuant to the parties' first divorce should terminate due to the twins' emancipation. A hearing was then held in September 1996 (which Wife did not attend), and the trial court issued an order terminating support for the twins. Both parties have stipulated that this order is of no force and effect, because the support obligation that it purported to terminate terminated by operation of law when the parties remarried in 1981. The purpose of the hearing was not to determine whether to recognize the juvenile court's or the Florida court's support order, and no such determination was made by the trial court.
{¶ 33} Accordingly, we reject Husband's attempt to characterize the 1996 hearing as an effort to resolve the existence of conflicting support orders pursuant to UIFSA R.C. 3115.09(C). The trial court properly determined that the juvenile court lacked jurisdiction to modify Husband's support obligations as established by the Florida court. Husband's second assignment of error is without merit.
 III
{¶ 34} Husband's assignments of error are overruled. The judgment of the trial court is affirmed.
CARR, P.J. and BATCHELDER, J. CONCUR
[1] URESA, which had been codified at R.C. Chapter 3115, was repealed by the General Assembly effective January 1, 1998, and replaced by the Uniform Interstate Family Support Act ("UIFSA"). Unless otherwise indicated, references in this decision to R.C. 3115.01 et seq. pertain to the URESA provisions in effect prior to 1998.