WALKER et al., Appellants,

v.

AMOS, Appellee.

[Cite as *Walker v. Amos* (2000), 140 Ohio App.3d 32.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990373.

Decided May 12, 2000.

---

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Rae M. Ryan,* Assistant Prosecuting Attorney, for appellants.

*Legal Aid Society of Cincinnati* and *Edward E. Stanten,* for appellee.

PAINTER, Judge.

In a complex case involving the interplay of child-support statutes, we determine that the trial court lacked jurisdiction to modify, by suspending, a support order from another state, where the mother and child still reside. Because the trial court had no subject-matter jurisdiction, we vacate its order.

## I.   Procedural History

Appellant Debra Walker and appellee Edgar Amos III, although they have never been married to each other, are the parents of one child. Walker and the child reside in Madison County, Indiana, and Amos resides in Hamilton County,

Ohio. In March 1994, Walker filed a uniform support petition form with the Hamilton County Clerk of Courts. The petition contained boxes to identify what action was being sought by the petitioner, which Walker marked to indicate that she was seeking a Uniform Reciprocal Enforcement of Support ("URESA") order for child support and medical coverage and for the collection of arrearages. She also requested income withholding and Amos's Social Security number. She did not indicate on the form that she was seeking registration of a foreign support order or the enforcement of an existing order.

The form indicated that Amos had been ordered to pay $35 a week and had an adjudicated arrearage of $1,225. The petition was signed by Walker and by Joseph Kilmer, the deputy prosecuting attorney of the Madison County Child Support Division.

Also attached to the petition was a request from Kilmer for verification of Amos's Ohio address, a copy of the decree of paternity in which an Indiana court had found, in pertinent part, that Amos had admitted to being the father of the child, that the parties had agreed that Amos would pay $35 a week beginning August 11, 1989, and that Amos should make every effort to provide medical insurance and should pay outstanding medical bills. The petition also had attached a computer printout of the support payments Amos had made from 1989 through March 1993, a copy of a photograph of Amos, and the certification from the Madison County Clerk of Court that the documents attached to the petition were a true copy of the original record.

Included in the documents was an order from the Indiana court certifying that the petition had been filed in Indiana in December 1993, that Amos was believed to be in Ohio, that Walker had been examined under oath and had affirmed the allegations in the petition, that Amos owed a duty of support, and that Walker was indigent. The Indiana court ordered that the certificate, copies of the petition, and a copy of Indiana's reciprocal support statute be transmitted to Ohio's Bureau of Child Support in Columbus.

The Hamilton County Clerk of Courts notified Amos by summons that he had received the certified complaint from Indiana and other documents under Ohio's URESA law and instructed Amos to show cause why the order of support requested by Walker should not be made. The notice was captioned to indicate that the proceedings would involve an R.C. 3113.21(C) (Support Order to Withhold Earnings) hearing. The record before us next contains a printed "Report of Referee, URESA, Enforcing Existing Foreign Orders" that was apparently placed of record after a hearing. In that order, the referee determined that the existing order the court was being asked to adopt and enforce was for $151.67 a month (this is the correct monthly amount due based on the Indiana court's weekly ordered $35), and that the arrearage was $1,890. The court ordered

payment of the monthly amount and $25 per month on the arrearage. The court did not order health coverage because it determined that Amos did not have health insurance available at a reasonable cost. The report was signed by the referee, Amos, and the Ohio Assistant Prosecutor for the Child Support Enforcement Agency ("CSEA"), and was approved by the trial court. Subsequently, the trial court entered a seek-work order under former R.C. 3113.21(D)(7).

Amos continued to fail to meet his child-support obligations. The CSEA filed contempt motions. In June 1995, the court concluded that Amos was physically able to work and found him in contempt for not meeting his support obligations. Amos failed to appear for the hearing scheduled to purge his contempt. He was apprehended. He paid the arrearages in full and was released.

Seven months later, CSEA filed another contempt motion because Amos had again failed to meet his support obligations. The hearing on the motion was continued twice for Amos to subpoena a witness to testify whether he was able to work. The motion was eventually dismissed when the court found that Amos had presented evidence of his inability to work due to his mental health problems. Almost one year later, CSEA filed another contempt motion. The trial court granted a continuance to allow Amos an opportunity to provide an updated medical statement about his mental health and his ability to work, and a status report on his "SSD claim."

Three months later, another continuance was granted based on the possibility that Amos would be eligible for Supplemental Security Income ("SSI"). Amos was determined to be eligible for SSI benefits and received an $8,000 retroactive payment, none of which went toward his support obligations. Because Amos failed to comply with the court's earlier order to make payments upon receiving SSI benefits, the court found Amos to be in contempt. Amos avoided incarceration by paying $2,000 to the support account, and a contempt hearing was scheduled.

Amos filed a motion to dismiss the contempt proceedings based on the fact that he was a recipient of SSI. After a four-month continuance, the parties attended a hearing before the trial court. The court granted Amos's motion, set aside its contempt order, and, among other things, suspended Amos's obligation to make child-support payments from the time he first became entitled to SSI benefits until further order of the court.

Walker and CSEA have appealed the trial court's decision. After oral argument, we requested that the parties file supplemental briefs on the issue of whether an Ohio court has subject-matter jurisdiction to modify a foreign state's child-support order by suspending its operation, when the father is a resident of Ohio, but the child and the mother reside in a foreign state. The parties filed their supplemental briefs on March 16, 2000. We have decided that the trial

court lacked subject-matter jurisdiction to suspend Amos's child-support obligations.

## II.   URESA

At the time Walker filed her petition, Ohio applied its version of URESA to matters concerning a foreign state's child-support order.   (The law was changed in January 1998, so that R.C. Chapter 3115, which contained URESA, was repealed and replaced by the Uniform Interstate Family Support Act ["UIFSA"]. Our references to R.C. Chapter 3115 in this opinion pertain to URESA, unless otherwise indicated.)   The Fourth District Court of Appeals has provided a succinct explanation of URESA:

"URESA's purpose was to provide a practical method to enforce the legal obligations of child support when an obligor left the state in which the children resided.   [Citation deleted.]   The URESA process commences when the obligee, *i.e.*, the custodial parent, files a petition in the state in which the obligor resides.   [Citation deleted.]   If the court in this 'initiating state' reviews the petition and determines that the obligor owes a duty of support, the proceeding is certified to the 'responding state,' *i.e.*, where the obligor resides.   [Citation deleted.]   The 'responding court' must then issue an order to enforce the obligor's pre-existing support obligation from the initiating state.   The URESA process merely enforces a support order that was previously established by an initiating state.   [Citation deleted.]   Thus, when Ohio is the responding state in a 'traditional' URESA proceeding to enforce a duty of support, the court must conform its order to the amount determined in the previous support order."[1]

### A.   Traditional Proceeding

Ohio courts have recognized two enforcement proceedings under URESA.[2]   A "traditional" URESA proceeding is one in which "the court must conform its order to the amount determined in the previous support order."[3]   This procedure

---

1.   *State ex rel. Scioto Cty. Child Enforcement Agency v. Adams* (July 23, 1999), Scioto App. No. 98CA2617, unreported, 1999 WL 597257.

2.   See *McClure v. McClure* (1997), 119 Ohio App.3d 76, 79, 694 N.E.2d 515, 517.

3.   *State ex rel. Scioto Cty. Child Enforcement Agency v. Adams*, citing *San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 12 O.O.3d 88, 388 N.E.2d 1229, paragraph one of the syllabus. (*Elavsky* held that the amount of support ordered in an initial proceeding under URESA "must conform to the amount determined in a previous divorce case, but once the URESA order is established it is not modified by a subsequent proceeding in the divorce action, unless the divorce court specifically so provides," harmonizing R.C. 3115.27 and 3115.28).

is based on the language of R.C. 3115.27 and 3115.28, and the Ohio Supreme Court's analysis in *San Diego v. Elavsky*.[4]  Former R.C. 3115.27 provided the following:

"A responding court shall not stay the proceeding or refuse a hearing under 3115.01 to 3115.34, inclusive, of the Revised Code because of any pending or prior action or proceeding for divorce, separation, annulment, dissolution, habeas corpus, adoption, or custody in this or any other state, * * *  If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the complaint being heard, the court must conform its support order to the amount allowed in the other action or proceeding."

Former R.C. 3115.28 provided:

"Any support order issued by a court of this state pursuant to sections 3115.01 to 3115.34, inclusive, of the Revised Code * * * is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court."

In *San Diego v. Elavsky, supra,* the Ohio Supreme Court, in harmonizing the two statutes, concluded that an initial URESA order can be modified only if the original court specifically orders the modification.  Thus, Ohio courts lack subject-matter jurisdiction to modify support obligations established in the initiating state's orders.[5]  (If, however, the order is silent on the issue of support to be paid, some courts, including this one, have concluded that the responding court has subject-matter jurisdiction to issue a child-support order because that act is not a modification.[6] )

Thus, a traditional URESA proceeding involves a petition seeking to have the responding court enforce the initiating court's support order.  In that proceeding, the initiating court maintains jurisdiction over the subject matter, the responding court is without jurisdiction to modify the initiating court's support order, and the order can be modified only by the initiating state.[7]

---

4.  *San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 12 O.O.3d 88, 388 N.E.2d 1229.

5.  See *McClure v. McClure* at 80, 694 N.E.2d at 517–518.

6.  See *Linville v. Marshall* (Mar. 1, 1995), Hamilton App. No. C–940129, unreported, 1995 WL 84075; *Swayne v. Newman* (1998), 131 Ohio App.3d 793, 723 N.E.2d 1117.

7.  See *McClure v. McClure* at 80, 694 N.E.2d at 518.

## B. Registered URESA

▇ The other method of enforcement under URESA is found in former R.C. 3115.32(G), which states that "the responding state actually adopts the initiating state's support order as its own judgment by virtue of the obligee's formal registration of the out-of-state support order in the responding state."[8] R.C. 3115.32(G) states that a registered foreign support order has this effect:

"[It] shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner."

"[S]everal courts have interpreted R.C. 3115.32(G) as authorizing Ohio courts to increase the support obligation set forth in the initiating court's order, provided the required changed circumstances are established, since it has been transformed into an Ohio support order."[9] (The Ohio order co-exists with the foreign support order.[10]) This court recognized this enforcement method in *Dickerson v. Dickerson* [11]:

"[Registration] is described in the statute as an 'additional remedy,' see R.C. 3115.32(A), and provides a procedure whereby the obligee may register a foreign support order in Ohio, which is then 'treated in the same manner as a support order issued by a court of this state.' R.C. 3115.32(G)."[12]

When a support order is registered, an Ohio court has the jurisdiction to modify it.[13]

Former R.C. 3115.32(E) set out the requirements to register a foreign order for child support. We have held that failure to file all the documents enumerated in the statute results in no registration of the foreign support order.[14] Following registration, the clerk must send a notice of registration to the obligor.[15]

---

**8.** *Id.* at fn. 3.

**9.** *McClure v. McClure,* at 80, 694 N.E.2d at 518.

**10.** B. Sowald & S. Morganstern, 2 Domestic Relations Law (1997), Section 23.41.

**11.** *Dickerson v. Dickerson* (Aug. 17, 1994), Hamilton App. No. C–930166, unreported, 1994 WL 442125.

**12.** See *Hudgins v. Hudgins* (1992), 80 Ohio App.3d 707, 610 N.E.2d 582; *Lewis v. Lewis* (Mar. 18, 1997), Franklin App. No. 96APF07–868, unreported, 1997 WL 128566; *Berry v. Berry* (July 28, 1993), Montgomery App. No. 13746, unreported, 1993 WL 295096; *Storey v. Storey* (Aug. 17, 1990), Greene App. No. 89 CA 95, unreported, 1990 WL 119262.

**13.** But, see, *Jacobs v. Jacobs* (1988), 62 Ohio App.3d 271, 575 N.E.2d 480.

**14.** *Dickerson v. Dickerson, supra.*

■ We conclude that the URESA action filed in this case was a traditional action seeking enforcement of the Indiana order, not a registered action. The record fails to demonstrate that the action was filed with any registry. Further, it is not clear that the notice provided to Amos indicated a *registered* URESA action. The record demonstrates that the classification form used by the clerk's office did not have checked the section marked "Register Foreign Order." The only indication on that form was the typewritten "Incoming URESA" and the name of the prosecuting attorney. Likewise, the petition failed to indicate that Walker was petitioning for the registration of a URESA order, but instead reflected that she was seeking only the establishment of one.[16] Nothing in the record clearly indicates that this was anything other than an action to enforce the Indiana court's order for child support, with the Indiana court otherwise retaining sole jurisdiction. The court in *McClure v. McClure* concluded that failure of the documents to expressly request registration deprived the trial court of authority to modify the initiating court's order. We agree.

Thus, under the law of URESA, because the Indiana support order was not a registered order, the trial court had no jurisdiction to modify Amos's obligation.

## III. FFCCSOA

■ An additional basis for concluding that the trial court lacked jurisdiction to modify the Indiana order is found in the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"), Section 1738, Title 28, U.S.Code, which became effective in October 1994 and was subsequently amended. The FFCCSOA came about because of the "lack of uniformity among states relating to the authority to establish and modify child support orders."[17] Consequently, the FFCCSOA provided that a court could modify a child-support order of another state's court only in two circumstances: (1) if the court had jurisdiction to do so (by a party or an agency registering the order from the other state in a state with jurisdiction over the nonmovant) *and* if the court of the other state no longer had continuing, exclusive jurisdiction of the child-support order because the child or any contestant was no longer a resident of the state or (2) if each contestant filed written consent for the state to make the modification and to assume continuing, exclusive jurisdiction over the order. Consequently, Ohio courts determined that they had no jurisdiction to modify an initiating court's

---

15. Former R.C. 3115.32(F).

16. See *McClure v. McClure,* 119 Ohio App.3d at 79–80, 694 N.E.2d at 517.

17. *State ex rel. Scioto County Child Enforcement Agency v. Adams, supra.*

order unless the exceptions were met.[18]  Thus, under FFCCSOA, the trial court in this case had no jurisdiction to modify the Indiana court's order.

## IV.  UIFSA

■  Although not specifically applicable to this case, Ohio's current version of UIFSA supports our decision.  (R.C. 3115.57 states that an order issued before January 1, 1998, *may* be modified pursuant to former R.C. Chapter 3115.)  Under R.C. 3115.16(B)(1), an Ohio responding court can, to the extent authorized by law, "[i]ssue or enforce a support order, modify a child support order, or determine the existence or nonexistence of a parent and child relationship."  R.C. 3115.46 requires that a party seeking to modify a child-support order register the order in Ohio, if it has not been registered, and contemporaneously file a motion specifying the reasons for the modification.  Once registered, the order can be modified if the Ohio court determines that the parties who are individuals reside in Ohio, that the child does not reside in the issuing state, and that the Ohio court has "jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order."[19]

If a child-support order is registered in Ohio and R.C. 3115.50 is inapplicable, an Ohio court, after notice and a hearing, may modify another jurisdiction's child-support order in two instances.[20]  The first instance is if the child, the obligee, and the obligor do not reside in the state that issued the child-support order and the person seeking modification is a nonresident of Ohio, while the respondent is an Ohio resident.[21]  The other instance is if the child or a party who is an individual is subject to the personal jurisdiction of the Ohio court, all the parties who are individuals file written consent in the issuing court for the Ohio court to modify the order and to "assume continuing, exclusive jurisdiction over the order," and the issuing court has enacted a law similar to Ohio's UIFSA.[22]  Under our facts, the trial court could not modify Indiana's child-support order under UIFSA.

## V.  Conclusion

In this case, we are precluded from addressing whether federal law preempts Supplemental Security Income from being subject to any state legal process and

---

18.  See *Paton v. Brill* (1995), 104 Ohio App.3d 826, 663 N.E.2d 421; *Stansbury v. Stansbury* (Aug. 9, 1999), Licking App. No. 99CA9, unreported, 1999 WL 668742.

19.  R.C. 3115.50.

20.  R.C. 3115.48(A).

21.  See R.C. 3115.48(A)(1).

22.  R.C. 3115.48(A)(2).

whether a child-support obligor's entitlement to Supplemental Security Income creates a rebuttable presumption of the obligor's inability to pay as raised by the parties. The trial court's order suspended Amos's child-support obligations. We believe that the suspension was essentially a modification.[23] In fact, suspension of a child-support obligation is a modification of the severest form. The child is left with no support for a period of time. The suspension by the trial court overstepped its jurisdiction to enforce the Indiana court's order. Because the trial court had no subject-matter jurisdiction to suspend the order, we vacate its judgment.

*Judgment vacated.*

DOAN, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

---

23. See *Phillips v. Phillips* (1996), 113 Ohio App.3d 868, 682 N.E.2d 701; accord *Cole v. Cole* (1990), 70 Ohio App.3d 188, 590 N.E.2d 862; *Coulter v. Coulter* (Jan. 12, 1998), Warren App. No. CA97-03-025, unreported, 1998 WL 8698; *Johnson v. Johnson* (Aug. 22, 1990), Summit App. No. 14544, unreported, 1990 WL 121101.