DECISION.
This case involves two child-support orders, one issued in 1987 by an Ohio court and one issued in 1997 by an Illinois court, concerning the same obligor and children. Defendant-appellant Otis Hill, Jr., appeals the judgment of the Hamilton County domestic relations court declaring that the 1987 Ohio support order was controlling and ordering the calculation of arrearages under that order. For the following reasons, we affirm.
The facts pertinent to this appeal have been ascertained from the record and from the stipulation of facts submitted by the parties in lieu of a transcript. Plaintiff-appellee Phyllis Hill was married to Otis Hill in Cincinnati, Ohio, on March 28, 1981. (For clarity, we refer to the parties as "mother" and "father," respectively). Three children were born of the marriage, two of whom are now emancipated. The parties filed for divorce, and on May 20, 1987, the domestic relations court entered the divorce decree that ordered the father to pay child support to the mother for their three children at the rate of $45 per week. Since the divorce, the father has resided in Cook County, Illinois, and the mother and the three children have remained in Hamilton County, Ohio.
In 1988, the mother filed a Uniform Reciprocal Enforcement Support (URESA) petition with the Hamilton County domestic relations court. The petition had a box that was checked by the mother to indicate that she was seeking an order of child support to be entered in Illinois in the amount of $90 per week, as well as the collection of arrearages in the amount of $1,666.66. The box requesting that the Ohio child-support order be registered in Illinois was not checked. The Ohio court (the initiating tribunal) certified the petition and forwarded it to the circuit court of Cook County, Illinois (the responding tribunal), where Mr. Cook resided. The Illinois court held a hearing on the petition, which the father and the prosecuting attorney for the Cook County Child Support Enforcement Agency attended. The mother was not present at the hearing. Based on the findings that the father owed a duty of support, that he was currently unemployed, and that he was receiving unemployment benefits, the Illinois court entered a temporary support order on April 5, 1988, in the amount of $23 per week, which was lower than the amount of support ordered by the Ohio court in 1987. Although it was asked to enforce payment on the arrearage under the Ohio order, the Illinois court did not do so. Child support was collected under the Illinois order and it was forwarded to the mother in Ohio. On August 14, 1997, the Illinois court modified its previous order and made support payable in the amount of $49.83 bi-weekly.
A recent audit conducted by the Hamilton County Child Support Enforcement Agency ("CSEA") revealed that the father's child-support obligations amounted to $32,018.47 under the 1987 Ohio order, and that he had made payments in the amount of $13,952.91 under the Illinois order, which left an arrearage under the Ohio order of $18,065.56. In response to the audit, the CSEA moved, pursuant to R.C. 3115.09(C), for a determination as to which state's support order was controlling. The domestic relations court referred the motion to a magistrate. The magistrate conducted a hearing at which counsel for the father, the mother, and the prosecuting attorney for the state of Ohio were present. The magistrate, finding that the Illinois court did not have subject-matter jurisdiction to modify the child-support order contained in the Ohio divorce decree absent registration of the order pursuant to the Illinois URESA statute, recommended that the 1988 Illinois order be declared void ab initio. In view of this, the magistrate further recommended that the Ohio order be held controlling and that Ohio maintain continuing, exclusive jurisdiction pursuant to the Uniform Interstate Family Support Act (UIFSA).[1] The father filed objections to these recommendations. The trial court overruled the objections and entered a judgment that held the Ohio order controlling. The father now appeals, bringing forth four assignments of error. For purposes of this decision, we address the assignments out of order.
In his second assignment of error, the father contends that the trial court erred in holding that the Illinois court lacked subject-matter jurisdiction to modify the child-support order contained in the Ohio divorce decree. We disagree.
When the mother sought enforcement of the Ohio child-support order in Illinois in 1988, both Ohio and Illinois had adopted the 1968 version of URESA.[2] The purpose of URESA was to "`improve and extend by reciprocal legislation the enforcement of duties of support' across state lines."[3] Under URESA there were two remedies available to the obligee to enforce a duty of child support: traditional petition and registration. The mother did not check the box on the URESA action form requesting that the Ohio child-support order be registered.[4]
Instead, she utilized the traditional petition remedy, which has previously been described by this court as follows:
 The URESA process commences when the obligee, i.e., the custodial parent, files a petition in the state in which the [obligee] resides. If the court in this "initiating state" reviews the petition and determines that the obligor owes a duty of support, the proceeding is certified to the "responding state," i.e., where the obligor resides. The "responding court" must then issue an order to enforce the obligor's pre-existing support obligation from the initiating state. The URESA process merely enforces a support order that was previously established by an initiating state [citations omitted].[5]
 The Ohio Supreme Court has held that "the amount of support ordered in the initial URESA proceeding must conform to the amount determined in a previous divorce case."[6] Thus, a responding state in a traditional URESA proceeding may not modify a child-support order, but must conform its order to the amount established in the initiating state's order.[7]
Here, the trial court applied Ohio law and concluded that Illinois's order modifying the amount of child support was void ab initio. But Ohio law was not controlling on whether the Illinois responding court had subject-matter jurisdiction to modify the initiating state's [Ohio's] child-support order. URESA contained a choice-of-law standard that provided the following: "duties of support * * * are those imposed under the laws of any state where the obligor [father] was present for the period during which support is sought."[8] Ohio and Illinois courts have, in relying on the language in that provision, concluded that when a responding state is addressing a URESA enforcement action, the responding state shall apply its own law in determining the obligor's duty of support.[9] Thus, we turn to Illinois law in this case to determine if the Illinois responding court had subject-matter jurisdiction to modify the Ohio child-support order contained in the divorce decree.
Illinois courts have held that a responding court in a URESA petition action may enter an order for an amount of prospective child support that differs from the amount previously ordered by the initiating court.[10]
But the Illinois Supreme Court, in In re Marriage of Gifford,[11]
has held that any support order issued pursuant to URESA does not supersede or nullify any previous order of support, nor does it modify the divorce decree of the initiating state.[12] The Gifford court relied on Section 31 of Illinois's URESA statute (the "anti-supersession" provision), which provided in part,
 A support order made by a court of this State pursuant to this Act does not nullify and is not nullified by a support order made by a * * * court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance * * * Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State.[13]
 The Gifford court also observed that the purpose of a URESA proceeding was to provide an additional and separate means to enforce child-support obligations, and that "if a URESA support order constituted a binding modification of the underlying decree then the legislature's laudable objective of providing an additional remedy would be thwarted."[14]
Based on the foregoing, we are convinced that the Illinois court here did not have subject-matter jurisdiction to prospectively modify the order of child support contained in the 1987 Ohio divorce decree.[15]
But we hold that the 1988 order was not void, in light of the Illinois law that gave a URESA responding court the authority to enforce an amount of support that differed from the initiating state's order. Here, the Illinois court found that a change of circumstances, i.e., that the father was unemployed, warranted a reduction in the amount of child support. Furthermore, the Illinois order issued in 1988 stated that "[t]his order shall not affect the underlying [Ohio] order," indicating that the court considered its support order an "additional" remedy. By providing for a different amount of support than that ordered by the Ohio court, the Illinois court merely established another support obligation for the father. This was in keeping with URESA's statutory scheme that contemplated the possibility that an obligor might be subject to multiple and inconsistent child-support obligations.[16] URESA's choice-of-law provision contemplated that a responding state would issue a support order based upon its own law, which might be different from the initiating forum's law and thus result in a different amount of child support ordered, as was evidenced here. Thus, the father has been subject to inconsistent orders of child support since 1988, a common reality under URESA. As the 1988 Illinois order of support was not void ab initio, the Illinois court was able to modify that order in 1997. We note that the 1997 Illinois order of support specifically stated that the court was modifying its own (not Ohio's) prior order of support, which the court had the inherent power to do.
The father reaches the conclusion that if it is determined that the Illinois court did not have subject-matter jurisdiction under URESA to modify the order of support, it did have jurisdiction under Illinois's Marriage and Dissolution of Marriage Act or Illinois's Uniform Enforcement of Judgment Act. Even if these two acts provided Illinois courts with subject-matter jurisdiction to modify a foreign divorce decree, it would make no difference here, as this action to enforce an order of child support was specifically brought under the URESA statute. This controversy began by the mother filing a URESA petition in 1988. Accordingly, the law under URESA governed the question of Illinois's subject-matter jurisdiction to modify a divorce decree in the child-support-enforcement proceeding here.
As the Illinois court did not have the subject-matter jurisdiction to prospectively modify the 1987 Ohio child-support order contained in the divorce decree, but had the authority to order a different amount of child support than that originally determined by the initiating court to be enforced in Illinois, the father's second assignment of error is overruled.
In the father's first assignment of error, he contends that the trial court erred in finding that the mother did not "appear" at the 1988 Illinois URESA hearing. He reasons that the court should have indeed found that the mother had appeared in Illinois and therefore concluded that Illinois had personal jurisdiction over her. This assignment is rendered moot by our resolution of the second assignment of error. As the responding Illinois court did not have subject-matter jurisdiction to prospectively modify the Ohio child-support order contained in the divorce decree, it is irrelevant whether the Illinois court had personal jurisdiction over the mother, because even if there was personal jurisdiction, it is beyond doubt that the parties could not have conferred subject-matter jurisdiction upon the court.
In his third assignment of error, the father argues that the trial court erred in overruling his objection to the magistrate's failure to afford full faith and credit to the Illinois order of support for purposes of determining which order controlled the calculation of arrearages. We are unpersuaded.
The goal of full faith and credit "is to give judgments the same effect as would be given to them by a court in their state of issuance."[17]
Here, Illinois law provided that its order to enforce child support, while in a different amount than that ordered by the initiating state, did not supersede or modify the initiating state's order of support or the divorce decree. As the Illinois court would not have expected its order to have any effect outside of Illinois, full faith and credit for that order was not an issue here. Further, full faith and credit requires each state to give preclusive effect to final judgments of sister states only if the courts rendering such judgments had both subject-matter jurisdiction and personal jurisdiction over the parties.[18] As the Illinois court did not have subject-matter jurisdiction to modify the Ohio order, Ohio would not have been required to afford the Illinois order of support full faith and credit. Accordingly, the third assignment of error is overruled.
In the fourth and final assignment of error, the father claims that the trial court erred in overruling his objection to the magistrate's retroactive application of UIFSA to determine which child-support order controlled the calculation of arrearages. We overrule this assignment because even if any error may have occurred from the trial court's retroactive application of UIFSA, it was not prejudicial to the father: the result would have been the same regardless of whether UIFSA was applied. Thus, the trial court properly held that arrearages could be calculated under the 1987 Ohio order.
Arrearages could be calculated under the 1987 Ohio order because, as we have already determined, that order, which was contained in the Ohio divorce decree, was never modified or superceded by the Illinois order of support. In fact, the two orders existed simultaneously. As the Ohio court still had jurisdiction over its own order of support, it had the inherent authority to enforce that order.[19]
Additionally, the trial court properly concluded, pursuant to UIFSA, that the Ohio order was controlling and that Ohio would have continuing exclusive jurisdiction over matters of child support. We note that UIFSA could be applied here to determine which order of support would have exclusive, prospective enforcement across state lines. As we have noted, URESA often subjected obligors to multiple and inconsistent orders for their support obligations, as evidenced here. To correct that problem, UIFSA was created to replace the multiple-order system with a one-order system.[20] UIFSA sets up priority rules to determine which order will become the controlling order and, thus, which court will have continuing exclusive jurisdiction over a support obligation.[21] Once an order is determined to be controlling, that order is the only order of support that may be enforced across state lines, and that order may only be modified by a responding court in an UIFSA enforcement proceeding if it is registered in the responding state, and if the obligor, the obligee and the children no longer live in the issuing state, or if both parties have filed written consent transferring continuing exclusive jurisdiction to the responding court.[22]
The instant action was filed pursuant to R.C. 3115.09(C), the provision of UIFSA allowing a party to request an Ohio court to declare which order of support, previously existing under URESA, will be the controlling order.[23] We note that UIFSA provides that orders issued prior to the effective date of the statute shall remain in effect as issued, but that those orders may be may be modified or terminated pursuant to UIFSA after its enactment date, January 1, 1998.[24] Two provisions of UIFSA, R.C.3115.07 and 3115.09, set forth guidelines to employ in establishing which order is controlling.
In determining which child-support order will be prospectively enforced across state lines, UIFSA utilizes the concept of "continuing exclusive jurisdiction." Under R.C. 3115.07, an Ohio court has continuing exclusive jurisdiction over a child-support order it has issued if "the obligor, individual obligee, or child subject to the child support is a resident of this state." Ohio has continuing exclusive jurisdiction in this case because the mother and the remaining minor child reside in Ohio. But the Illinois court also has continuing exclusive jurisdiction over the child-support order it had issued because the father remains a resident of Illinois.[25] As UIFSA contemplates the possibility of more than one court having continuing exclusive jurisdiction, we look to R.C. 3115.09
to determine which order is controlling in this case.
R.C. 3115.09(B) provides in part,
 [I]f two or more child support orders have been issued by tribunals of this state or another state with regard to the same obligor and child, a tribunal of this state shall do the following:
 (2) If more than one of the tribunals would have continuing, exclusive jurisdiction, recognize the child support order issued by the tribunal in the current home state of the child as controlling.
 Here, the remaining child subject to child support resides in Ohio with the mother. Thus, Ohio will have prospective continuing, exclusive jurisdiction over orders of child support between the father and the child. Further, the Ohio order will be the only order now subject to enforcement across state lines.
In sum, we conclude that the trial court properly declared that the arrearage should be calculated under the Ohio order of support, and that UIFSA provides that Ohio will have continuing exclusive jurisdiction in the prospective enforcement of support orders. The fourth assignment of error is overruled, and the trial court's judgment is affirmed.
Judgment affirmed.
Doan, P.J., and Winkler, J., concur.
[1] R.C. Chapter 3115, which contained URESA, was repealed and replaced by UIFSA in January 1998.
[2] See former R.C. 3115.01 through 3115.34; 750 Ill.Comp.Stat. 20/1 through 750 Ill.Comp.Stat. 20/42, formerly Ill.Ann.Stat., Chapter 40, Paragraphs 1201-1242.
[3] Former R.C. 3115.01(A); 750 Ill.Comp.Stat. 20/1, formerly Ill.Ann.Stat., Chapter 40, Paragraph 1201; In re Byard (1996),74 Ohio St.3d 294, 296, 658 N.E.2d 735, 737.
[4] URESA provided that once a child-support order is registered in a responding state, "* * * the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings, for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner." See former R.C. 3115.32(G) and Ill.Ann.Stat., Chapter 40, Paragraph 1232. Thus, in this case if the order of support had been registered in Illinois, that order would have been treated in the same manner as a support order issued by a court of Illinois. Illinois would have had jurisdiction to modify its own support order. See Lewis v.Lewis (Mar. 18, 1997), Franklin App. No. 96APF07-868, unreported.
[5] Walker v. Amos (2000), 140 Ohio App.3d 32, 746 N.E.2d 642, quotingState ex rel. Scioto Cty. Child Enforcement Agency v. Adams (July 23, 1999), Scioto App. No. 98CA2617, unreported; see, generally, former R.C. Chapter 3115 and 750 Ill.Comp.Stat. 20/1 et seq., formerly Ill.Ann.Stat., Chapter 40, Paragraphs 1240 et seq.
[6] San Diego Cty. v. Elavsky (1979), 58 Ohio St.2d 81, 86,388 N.E.2d 1229, 1233.
[7] See Walker, 140 Ohio App.3d at 37-38, 746 N.E.2d at 646-647.
[8] Former R.C. 3115.06 and 750 Ill.Comp.Stat. 20/7, formerly Ill.Ann.Stat., Chapter 40, Paragraph 1207.
[9] See Little v. Little (May 2, 1991), Greene App. No. 90CA77, unreported; People ex rel. Gribbins v. Skopitz (1985), 135 Ill. App.3d 76,481 N.E.2d 815.
[10] In re Marriage of Casey (1990), 198 Ill. App.3d 619, 556 N.E.2d 271;Sullivan v. Sullivan (1981), 98 Ill. App.3d 928, 424 N.E.2d 957; Millerv. Miller (1994), 268 Ill. App.3d 132, 643 N.E.2d 288.
[11] (1988), 122 Ill.2d 34, 521 N.E.2d 929.
[12] Id. at 39, 521 N.E.2d at 931.
[13] 750 Ill.Comp.Stat. 20/31, formerly Ill.Ann.Stat., Chapter 40, Paragraph 1231.
[14] In re Marriage of Gifford, 122 Ill.2d. at 39,521 N.E.2d at 931.
[15] See also Coons v. Wilder (1981), 93 Ill. App.3d 127, 416 N.E.2d 785
(where obligee filed her Oregon divorce decree in Illinois, the Illinois court held that it was not bound to modifications of support ordered by a URESA responding court in Florida, because, noting Florida's anti-supersession provision, the responding court lacked subject-matter jurisdiction to modify the Oregon divorce decree).
[16] Dunn v. Dunn (2000), 137 Ohio App.3d 117, 122, 738 N.E.2d 81,84-85.
[17] Burke v. Burke (Ind.App. 1993), 617 N.E.2d 959, 961.
[18] Williams v. North Carolina (1945), 325 U.S. 226, 229,65 S.Ct. 1092, 1095.
[19] See Loetz v. Loetz (1980), 63 Ohio St.2d 1, 2, 406 N.E.2d 1093
("The court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters relating to * * * support of the minor children of the parties").
[20] Hatamyar, Interstate Establishment, Enforcement, and Modificationof Child Support Orders (2000), 25 Okla.City U.L.Rev. 511.
[21] See R.C. 3115.07 and 3115.09.
[22] See R.C. 3115.46 through 3115.48.
[23] R.C. 3115.09(C) provides that "[i]f two or more child support orders have been issued for the same obligor and child and the obligor or the individual obligee resides in this state, a party may request a tribunal of this state to determine which order to recognize as controlling * * *."
[24] See R.C. 3115.57.
[25] Illinois adopted UIFSA in 1997, and its version of UIFSA contains the same definition of continuing exclusive jurisdiction. See 750 Ill.Comp.Stat. 22/205(a)(1).