[Cite as *Brookville Ents., Inc. v. Kessler Estate HCF Mgt., Inc.*, 2022-Ohio-1420.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

BROOKVILLE ENTERPRISES INC.     :
    :
    Plaintiff-Appellee     :     Appellate Case No. 29314
    :
v.     :     Trial Court Case No. 2020-CV-4171
    :
CLARENCE J. KESSLER ESTATE     :     (Civil Appeal from
HCF MANAGEMENT INC.     :     Common Pleas Court)
ADMINISTRATOR, et al.     :
    :
    Defendant-Appellant    

· · · · · · · · · ·

O P I N I O N

Rendered on the 29th day of April, 2022.

· · · · · · · · · ·

ALEXANDER W. CLOONAN, Atty. Reg. No. 0095690, 2625 Commons Boulevard, Beavercreek, Ohio 45431
    Attorney for Plaintiff-Appellee

R.C. WIESENMAYER, Atty. Reg. No. 0007207, 15 Willipie Street, Suite 300, P.O. Box 299, Wapakoneta, Ohio 45895
    Attorney for Defendant-Appellant

· · · · · · · · · · · ·

WELBAUM, J.

{¶ 1} Defendant-Appellant, Bruce Kessler, appeals from an order overruling his motion for relief from a default judgment entered in favor of Plaintiff-Appellee, Brookville Enterprises, Inc., dba Brookhaven Nursing & Rehabilitation Center ("Brookhaven"). In support of his appeal, Kessler contends that the trial court erred in concluding that Brookhaven had perfected service of process on him. In addition, Kessler argues that the trial court erred in failing to hold an evidentiary hearing before ruling on the motion for relief from judgment. Alternatively, Kessler contends that the trial court erred in denying his motion under Civ.R. 60(B)(1) and (5).

{¶ 2} We conclude that the trial court abused its discretion in overruling Kessler's motion for relief from the default judgment, which was based on Kessler's claim that he had not been properly served with the complaint. The court incorrectly analyzed the motion by referring to Civ.R. 60(B). However, courts have inherent jurisdiction to vacate judgments based on lack of personal jurisdiction, which renders a judgment void. Movants, therefore, do not have to establish entitlement to relief under Civ.R. 60(B). Furthermore, there were deficiencies and inconsistencies relating to service that warranted a hearing on Kessler's motion for relief. In view of these holdings, we need not address Kessler's alternative argument regarding Civ.R. 60(B)(1) and (5).

{¶ 3} Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

## I. Facts and Course of Proceedings

{¶ 4} On October 28, 2020, Brookville filed a complaint against Bruce Kessler and HFC Management ("HFC"), which was the administrator of the estate of Clarence Kessler. Brookhaven operates a licensed skilled nursing facility in Brookville, Ohio, where Kessler's father, Clarence, resided from June 22, 2019, until Clarence's death on March 29, 2020. According to the complaint, Brookhaven was entitled to $38,825.92 in unpaid charges that Clarence incurred during his residency. However, Bruce Kessler allegedly used a power of attorney to withdraw money from Clarence's bank accounts for his own benefit and also fraudulently transferred a remaining balance of $27,188.43 to himself in violation of R.C. 1336.04(A)(2)(b), rendering Clarence's estate insolvent. The complaint asked the trial court to hold Bruce Kessler personally responsible for payment of $27,188.43, plus interest.

{¶ 5} The address listed in the complaint for Bruce Kessler was 903 Avery Lane, Englewood, Ohio, 45322. On October 28, 2020, Brookhaven asked the sheriff to deliver personal service of the complaint to Kessler at that address. A summons for personal service, with tracking number CVPS000000000048715, was issued on October 29, 2020.

{¶ 6} On October 31, 2020, HFC filed an answer admitting that the estate was insolvent.[1] On November 20, 2020, the sheriff filed a return of service, indicating that he had received the summons on November 2, 2020, and had made three attempts to serve it, on November 15, November 16, and November 17, 2020. The door was never answered, nor did the sheriff receive a call back.

{¶ 7} On December 1, 2020, Brookhaven instructed the clerk to issue service to

---

[1] The same attorney represented both Brookhaven, the plaintiff, and HFC, the defendant.

Kessler by certified mail at the Avery Lane address. The clerk issued service by certified mail the same day, with tracking number 9414726699042175108098.

{¶ 8} On December 14, 2020, the clerk sent Brookhaven a notification of a failure of service for tracking number CVPS000000000048715. The reason for the failure was "never got an answer at door or a call back."

{¶ 9} On December 28, 2020, Brookhaven asked the clerk to issue service by ordinary mail to Kessler at the Avery Lane address. As a result, the clerk issued service by ordinary mail to Kessler the same day. Kessler did not thereafter file an answer in the action. The ordinary mail was also not returned to the court.

{¶ 10} On January 28, 2021, the trial court filed a default notice, stating that a review of the file indicated that service had been perfected and that Kessler was in default for failure to answer. The court instructed Brookhaven to review its file and ascertain if default proceedings were in order. In addition, the court noted that a failure to file a response to the order within 14 days could result in administrative dismissal of the action. The court electronically notified Brookhaven and HFC and sent a copy of the default notice to Kessler by ordinary mail at the Avery Lane address.

{¶ 11} On February 2, 2021, Brookhaven filed a motion for default judgment, asking the court to grant judgment against Kessler in the amount of $27,188.43, based on his failure to timely file an answer. Brookhaven also attached affidavits to its motion regarding the matters alleged in the complaint and the fact that Kessler was not in the military service. The same day, the court filed a default judgment against Kessler and awarded Brookhaven $27,188.43, plus interest at the statutory rate and costs. The

judgment also included a Civ.R. 54(B) certification. On February 2, 2021, the clerk sent the parties a Civ.R. 58(B) notice that a final appealable order had been filed. Brookhaven then filed a praecipe for a certificate of judgment with the clerk on February 9, 2021. No appeal was taken from the default judgment.

{¶ 12} Nothing further occurred until June 9, 2021, when the clerk filed a copy of the certified mail envelope that was returned to the court. The envelope was marked with written notations, including "Unclaimed," and "LN PM 12/3/20." Further, a printed label stated "Return to Sender," "Attempted – Not Known," and "Unable to Forward."

{¶ 13} On June 30, 2021, Kessler filed a motion for relief from judgment under Civ.R. 60(B)(1) and (5). In the motion, Kessler alleged that he had repeatedly been out of town during December 2020 and January 2021, and had asked two friends to monitor his mail. He further said that these friends had not informed him that he had received mail from the court, that he had not had any knowledge that a complaint had been filed until he met with his lawyer on June 24, 2021, and that Brookhaven had never made any demands for payment from him. Motion for Relief from Judgment (June 30, 2021), p. 2. Kessler also alleged that he had a meritorious defense to the action. *Id.* at p. 2-3. Kessler's affidavit was attached to the motion, outlining various facts supporting his claims about service and his request for relief.

{¶ 14} On July 1, 2021, the clerk sent Brookhaven a failure of service notification concerning tracking number 9414726699042175108098, indicating that service had not been perfected due to "Civil Unsuccessful Service." The comment was: "Attempted Not Known."

{¶ 15} Brookhaven filed a response to Kessler's motion on July 15, 2021. The trial court then overruled the motion for relief from judgment on October 25, 2021. This timely appeal followed.

I.  Perfection of Service

{¶ 16} Kessler's first assignment of error states that:

The Trial Court Committed an Error of Law and/or Abused Its Discretion When It Found That Service Had Been Perfected on Appellant Bruce Kessler.

{¶ 17} Under this assignment of error, Kessler argues that the trial court erred in rejecting his motion because he was never properly served with the complaint. Specifically, Brookhaven's request for service by ordinary mail preceded the determination that certified mail had failed, in violation of Civ.R. 4.6(D). In response to this argument, Brookhaven argues that there is no evidence that it failed to accomplish service in a manner reasonably calculated to inform Kessler of the action.

{¶ 18} The trial court's decision was quite brief and did not discuss all the factors relevant to relief from judgment under Civ.R. 60(B). Instead, the court simply stated that:

Specifically, the Court notes that successful service was perfected on Defendant Kessler at his home via regular mail on December 29, 2020. Although Defendant Kessler claims he was frequently out of town and had others checking his mail, the Court finds this does not arise to the level of excusable neglect and further notes that the service of the Complaint to

Defendant Kessler's home address was reasonably calculated to apprise him of the pendency of this action.

Decision, Order, and Entry Overruling Motion to Set Aside Judgment (Oct. 25, 2021) ("Decision"), p. 2.

{¶ 19} As a preliminary point, Kessler did not need to file a Civ.R. 60(B) motion, nor did he have to establish entitlement to relief under that rule. "It is axiomatic that for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void." *Lincoln Tavern, Inc. v. Snader*, 165 Ohio St. 61, 64, 133 N.E.2d 606 (1956). *Accord Knickerbocker Properties, Inc. XLII v. Delaware Cty. Bd. of Revision*, 119 Ohio St.3d 233, 2008-Ohio-3192, 893 N.E.2d 457, ¶ 20. "The authority to vacate a void judgment is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio courts." *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941(1988), paragraph four of the syllabus. *See also Midland Funding, L.L.C. v. Dixon*, 2d Dist. Greene No. 2013-CA-27, 2013-Ohio-5052, ¶ 7.

{¶ 20} Despite the fact that the appropriate procedure was a common law motion to vacate rather than a Civ.R. 60(B) motion, the applicable review standard is whether the trial court abused its discretion. This is the same standard used to evaluation decisions on Civ.R. 60(B) motions. *E.g., Flaugher v. Flaugher*, 2020-Ohio-299, 143 N.E.3d 623, ¶ 9 (2d Dist.); *Teeters v. Jeffries*, 12th Dist. Clermont No. CA2021-02-007, 2021-Ohio-2985, ¶ 16; *Erin Capital Mgt., L.L.C. v. Fournier*, 10th Dist. Franklin No. 11AP-483, 2012-Ohio-939, ¶ 16.

{¶ 21} " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support" it. *Id.*[2]

{¶ 22} The issue here is whether Kessler was properly served. If not, the default judgment would have been void. "Service of process must be made in a manner reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond." *Carter-Jones Lumber Co. v. Meyers*, 2d Dist. Clark No. 2005-CA-97, 2006-Ohio-5380, ¶ 11, citing *Akron-Canton Regional Airport Auth. v. Swinehart*, 62 Ohio St.2d 403, 406, 406 N.E.2d 811 (1980). "The plaintiff bears the burden of obtaining proper service on a defendant." *Id.*, citing *Cincinnati Ins. Co. v. Emge*, 124 Ohio App.3d 61, 63, 705 N.E.2d 408 (1st Dist.1997). "In those instances where the plaintiff follows the Civil Rules governing service of process, courts presume that service is proper unless the defendant rebuts this presumption with sufficient evidence of non-service." *Id.*

{¶ 23} The threshold issue, then, is whether Brookhaven followed the rules

---

[2] In its brief, Brookhaven has cited authority indicating that an abuse of discretion "connotes more than an error of law or judgment." Brookhaven Brief at p. 12. The Supreme Court of Ohio has recently rejected this formulation, stressing that "a court does not have discretion to misapply the law." *Johnson v. Abdullah*, Ohio Slip Opinion No. 2021-Ohio-3304, __ N.E.3d __, ¶ 38.

governing service of process. Civ.R. 4.1 allows service to be made in various ways, including certified mail, personal service, or residence service. *See* Civ.R. 4.1(A)(1)(a), (B), and (C). Where certified mail is involved, Civ.R. 4.1(A)(2) provides: "If the return shows failure of delivery, the clerk shall forthwith notify the attorney of record or, if there is no attorney of record, the party at whose instance process was issued and enter the fact and method of notification on the appearance docket. The clerk shall file the return receipt or returned envelope in the records of the action." Likewise, where personal service fails, Civ.R. 4.1(B) instructs the clerk to follow the notification procedures in Civ.R. 4.1(A)(2).

{¶ 24} In the case before us, the clerk did follow the notification procedures for failure of personal service by notifying Brookhaven's attorney on December 14, 2020, of a failure of service for tracking number CVPS000000000048715. This was the tracking number assigned to the personal service request.

{¶ 25} However, for reasons that are unclear from the record, the clerk did not follow the notification procedures for the failure of certified mail service. Instead, the clerk failed to file the returned certified mail envelope until June 9, 2021, which was months after service was issued and after the default judgment was granted.

{¶ 26} What appears to have happened (at least based on the record before us) is that Brookhaven's attorney mistakenly assumed that the December 14, 2020 failure of service notification related to the certified mail service, which had been issued on December 1, 2020. However, the tracking number for the certified mail service was 9414726699042175108098. This was quite different than the tracking number used for

the personal service.   In addition, the comment on the failure of service notification stated that the reason for failure was "never got an answer at door or a call back."   This remark clearly did not relate to certified mail service.

**{¶ 27}** In situations where certified mail is unclaimed, Civ.R. 4.6(D) allows service by ordinary mail.   As pertinent here, Civ.R. 4.6(D) provides that:

If a United States certified or express mail envelope attempting service within or outside the state is returned with an endorsement stating that the envelope was unclaimed, the clerk shall forthwith notify the attorney of record * * * and enter the fact and method of notification on the appearance docket.   If the attorney, * * * *after notification by the clerk*, files with the clerk a written request for ordinary mail service, the clerk shall send by United States ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk.   The mailing shall be evidenced by a certificate of mailing which shall be completed and filed by the clerk.   Answer day shall be twenty-eight days after the date of mailing as evidenced by the certificate of mailing.   The clerk shall endorse this answer date upon the summons which is sent by ordinary mail.   Service shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery. If the ordinary mail envelope is returned undelivered, the clerk shall forthwith

notify the attorney, or serving party.

(Emphasis added.)

{¶ 28} This rule allows an attorney to ask the clerk to issue service by ordinary mail after the clerk notifies the attorney that certified mail service has failed. However, since the clerk had not yet notified Brookhaven's attorney that certified mail service had failed, ordinary mail service was not appropriate when Brookhaven filed its request. Again, what appears to have happened is that Brookhaven's attorney believed the December 14, 2020 notice of failure of service applied to the certified mail service rather than to the previously-failed personal service.

{¶ 29} As indicated in the statement of facts, Brookhaven requested ordinary mail service on December 28, 2020. One month later, the trial court sent a default notification because service "had been perfected" on Kessler and he had not answered or appeared in the action. This notice was erroneous since service had not been perfected at that point.

{¶ 30} Notably, Civ.R. 4.6(E) places responsibility on attorneys for verifying service. In this regard, the rule states that: "The attorney of record or the serving party shall be responsible for determining if service has been made and shall timely file written instructions with the clerk regarding completion of service notwithstanding the provisions in Civ.R. 4.1 through 4.6 which instruct a clerk to notify the attorney of record or the serving party of failure of service of process." Thus, when the trial court sent a default notice on January 28, 2021, Brookhaven's attorney was responsible for verifying that service had been made. The trial court's entry also stressed this point by admonishing

Brookhaven to review its file "to ascertain whether or not default proceedings pursuant to Civil Rule 55 are in order at this time." Notice (Default) (Jan. 28, 2021), p. 1.

{¶ 31} Rather than following these instructions, Brookhaven filed a motion for default judgment on February 2, 2021, and the default judgment was granted the same day. Had the file been reviewed at that time, it would have indicated that the clerk had not filed a return regarding certified mail service.

{¶ 32} In responding to Kessler's argument, Brookhaven argues that service was perfected because it was "reasonably calculated" to inform Kessler of the action. Brookhaven relies on the fact that a copy of the motion for default judgment was mailed to Kessler at the address listed in the complaint. Brookhaven further contends that even if it "jumped the gun" by prematurely using ordinary mail service, service was sent to an address where there was a reasonable expectation that Kessler would receive it (Kessler's home address). Since the ordinary mail was not returned to the court, Brookhaven argues there was a "reasonable expectation" that it would have been delivered to Kessler.

{¶ 33} Brookhaven does not provide specific authority for these contentions but does point to one case in which we discussed the fact that a party had "jumped the gun" by sending ordinary mail at the same time certified mail was sent. Brookhaven Brief at p. 18, discussing *In re S.A.*, 2d Dist. Montgomery No. 25532, 2013-Ohio-3047. This was in response to Kessler's use of *S.A.* as authority. *Id.* However, *S.A.* and the case on which it relied differed in important ways from the current situation.

{¶ 34} *S.A.* involved change of custody proceedings in which the clerk sent the

mother a summons by both certified mail and ordinary mail on April 30, 2012, for a custody hearing that was to take place on July 16, 2012. The clerk then filed a notice on July 25, 2012, indicating that the certified mail was unclaimed. The ordinary mail was also never returned. *Id.* at ¶ 3 and 11. Relying on another case in which the serving party had "jumped the gun," we concluded that a presumption of service arose because the ordinary mail service had not been returned and that it was "reasonable to conclude" that service had been perfected by ordinary mail on the mother. *Id.* at ¶ 12-13, discussing *Cheatham v. Cheatham*, 2d Dist. Greene No. 92-CA-0057, 1992 WL 371846 (Dec. 18, 1992).

{¶ 35} Notably, however, we relied on the fact that the mother was not prejudiced by the contemporaneous filings. In this regard, we stressed that "[s]ignificantly, Mother provided the trial court with no evidentiary materials to support her claim that she did not receive service of the summons at that address, and she appeared by seeking and obtaining a continuance of the initial hearing date of July 16, 2012." *Id.* at ¶ 13.

{¶ 36} Certainly, by appearing in the action, the mother could be said to have waived defects in service. There is no question that parties may waive personal jurisdiction by appearing and failing to properly raise the issue. *E.g., Lundeen v. Turner*, 164 Ohio St.3d 159, 2021-Ohio-1533, 172 N.E.3d 150, ¶ 19; *State ex rel. Skyway Invest. Corp. v. Ashtabula Cty. Court of Common Pleas*, 130 Ohio St.3d 220, 2011-Ohio-5452, 957 N.E.2d 24, ¶ 16. This is not true in the case before us, since Kessler did not appear in the action before default judgment was granted. In addition, unlike the mother in *S.A.*, Kessler provided evidentiary materials to support his claim of lack of service.

{¶ 37} *Cheatham* involved two proceedings: a request to enforce a foreign support

order and a subsequent motion to determine support. The initial request was served by certified mail, which was unclaimed. *Cheatham*, 2d Dist. Greene No. 92-CA-0057, 1992 WL 371846, at *1. Subsequently, the clerk served the defendant with copies of the registration of the foreign support order; the defendant then moved to vacate the order based on lack of subject matter jurisdiction and lack of service under R.C. 3115.32(F).[3] The trial court rejected both claims, finding that it had both subject matter and personal jurisdiction, and it registered the order. *Id.* The prosecuting attorney subsequently filed to establish the current child support and alimony arrearage, and certified mail and ordinary mail were issued at the same time. As before, the certified mail was returned as "unclaimed," and the ordinary mail service was not returned. *Id.*

{¶ 38} On appeal, we rejected the defendant's contention that he was not properly served with notice of the May 1992 hearing on the support arrearage. We noted that due to the defendant's previous failure to claim certified mail service, there was little likelihood that he would claim certified service, and ordinary service would be needed. *Id.* More importantly, we failed to see any prejudice, because the defendant "did not dispute that he received regular mail notice of the May 19, 1992 hearing in time to defend the motion." *Id.* at *3. Again, this was not the situation in the case before us.

---

[3] R.C. 3115.32 was part of the Uniform Reciprocal Enforcement of Support Act, ("URESA") and was repealed when new provisions relating to enforcement of support orders were enacted. *See* H.B. 352, 1997 Ohio Laws 79. Under URESA, a foreign support order was first registered and confirmed, and a prosecuting attorney would then proceed to enforce the order. *See Lambright v. Pullen*, 6th Dist. Lucas No. L-87-279, 1988 WL 57506, *4 (June 3, 1988) (discussing R.C. 3115.32(F)). "The law was changed in January 1998, so that R.C. Chapter 3115, which contained URESA, was repealed and replaced by the Uniform Interstate Family Support Act." *Walker v. Amos*, 140 Ohio App.3d 32, 37, 746 N.E.2d 642 (1st Dist.2000).

{¶ 39} Furthermore, unlike both *S.A.* and *Cheatham*, there is a dispute here about whether the certified mail was returned as "unclaimed." While that word appears in handwriting on the certified mail envelope, there was no indication of the identity of the individual who made this comment. Moreover, the label apparently affixed by the Post Office stated "Return to Sender," "Attempted – Not Known," and "Unable to Forward." Failure of Service Notification (July 1, 2021), p. 2. Although the certified mail envelope was filed after the default judgment was granted, this evidence was in the record before the trial court ruled on the motion for relief from default judgment.

{¶ 40} The Supreme Court of Ohio has previously distinguished between "Unclaimed" mail and mail that is marked "Attempted – Not Known." Specifically, the court remarked that "the endorsement 'Unclaimed' means that the reason for nondelivery was that the '[a]ddressee abandoned or failed to call for mail,' while the endorsement 'Attempted – Not Known' means '[d]elivery attempted, addressee not known at place of address.' " *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 22, quoting The United States Postal Service, Domestic Mail Manual, Section 507, Exhibit 1.4.1, available at http://pe.usps.gov/text/dmm300/507.htm.[4]

{¶ 41} The court further noted in *Thompkins* that:

When a postal return reads "Attempted Not Known," no purpose would be served by a follow-up ordinary mail letter sent to the same address. The "Unclaimed" designation implies that the person may in fact

_____

[4] This definition has remained the same. *See* United States Postal Service, Domestic Mail Manual, Section 507, Exhibit 1.4.1, http://pe.usps.gov/text/dmm300/507.htm (accessed Mar. 21, 2022).

reside or receive mail at the designated address but for whatever reason has chosen not to sign for the certified mail. In that situation, a follow-up communication by ordinary mail is reasonably calculated to provide the interested party with notice and an opportunity to be heard. Such a communication, not returned, bears a strong inference that the intended recipient received the letter. This is not so, however, with ordinary mail following the return of a certified letter with the endorsement "Attempted Not Known." The inference then is that the intended recipient does not reside or receive mail at the designated address and is not known to the residents there. A follow-up letter in these circumstances would not permit a similar inference of receipt.

*Id.* at ¶ 23.

{¶ 42} Due to the inconsistency in the certified mail envelope filed with the clerk of courts, we cannot conclude that a presumption of service attached. The most that can be said is that a dispute existed, given that contradictory descriptions appeared.

{¶ 43} The only further evidence before the court in the context of the motion to vacate was Kessler's affidavit, in which Kessler said that he did not have notice of the complaint against him until he received it during a visit with his attorney on June 24, 2021. Kessler further explained that he was out of town during relevant periods of time and had asked two separate friends to collect his mail and to preserve anything important. According to Kessler, these individuals did not inform him that he had received a letter from the Montgomery County Clerk of Courts. Finally, Kessler also stated that he had

not received any demands for payment from Brookhaven. Motion for Relief from Judgment (June 30, 2021), Kessler Affidavit, ¶ 1-7.

**{¶ 44}** Brookhaven argues that Kessler should have submitted evidence from these friends, and that the trial court was not required to accept his affidavit as credible. However, the court's decision was not based on lack of credibility; it was primarily based on a finding that Kessler failed to demonstrate "excusable neglect." Decision at p. 2. As noted, Kessler was not required to prove excusable neglect; he only had to establish a lack of service. *Carter-Jones Lumber*, 2d Dist. Clark No. 2005-CA-97, 2006-Ohio-5380, at ¶ 10. The court also failed to consider the failure of notification and the inconsistency in the notations on the certified mail envelope.

**{¶ 45}** Accordingly, the trial court erred in analyzing the motion to vacate, and its decision was based on unsound reasoning. Kessler's first assignment of error therefore is sustained.


### III. Failure to Hold Evidentiary Hearing

**{¶ 46}** Kessler's second assignment of error states that:

> The Trial Court Committed an Error of Law and/or Abused Its Discretion By Failing to Hold a Hearing Before Ruling on Appellant Bruce R. Kessler's Motion for Relief From Judgment.

**{¶ 47}** Under this assignment of error, Kessler argues that the trial court erred in failing to hold a hearing on whether he had been properly served. In support of this position, Kessler has cited *Portfolio Recovery Assocs., L.L.C. v. Thacker*, 2d Dist. Clark

No. 2008-CA-119, 2009-Ohio-4406. In *Portfolio Recovery*, the defendant was served at her residence address by certified mail, which was unclaimed. Ordinary mail service was then sent to the same address. *Id.* at ¶ 2. The defendant was not, however, served with a copy of the motion for default judgment; our opinion also does not indicate whether a copy of the default judgment was sent to her. *Id.* at ¶ 2-3.

{¶ 48} In any event, the defendant filed a motion to vacate the default judgment shortly after it had been filed, and she submitted an affidavit claiming she had not received the complaint or the default judgment entry. *Id.* at ¶ 5. The trial court overruled the motion without holding a hearing. *Id.* at ¶ 7-8.

{¶ 49} On appeal, we concluded that "when process was sent to a defendant at the defendant's correct address and the defendant has only his self-serving testimony that he did not receive service of process, the court must hold a hearing to determine whether service was proper." *Id.* at ¶ 31, citing *Sec. Nat. Bank & Trust Co. v. Murphy*, 2d Dist. Clark No. 2552, 1989 WL 80954 (July 20, 1989).

{¶ 50} Unlike the present case, the clerk in *Portfolio Recovery* appears to have properly complied with procedures for service. Therefore, the case is not controlling.

{¶ 51} Nonetheless, there is disputed evidence here about whether service was, in fact, "Unclaimed" or was "Attempted – Not Known." There is also some confusion about the proper zip code. The default notice, the motion for default judgment, and the default judgment entry were all sent by ordinary mail to the 903 Avery Lane address, which is also the address listed on Kessler's affidavit. However, the zip code on these documents and on the service documents was 45322, whereas the zip code on Kessler's

affidavit was 45321. Whether this played a factor in the alleged lack of service is unknown. Consequently, a hearing could be beneficial in determining whether service was achieved.

**{¶ 52}** Based on the preceding discussion, the second assignment of error is sustained. This cause will be remanded for a hearing on the service of process.

## IV. Relief Under Civ.R. 60(B)

**{¶ 53}** Kessler's third assignment of error is as follows:

> The Trial Court Abused Its Discretion By Denying Appellant Bruce R. Kessler's Motion for Relief from Judgment Pursuant to Civ.R. 60(B)(1) and Civ.R. 60(B)(5).

**{¶ 54}** As an alternative argument, Kessler contends that his motion should have been granted under Civ.R. 60(B), because he had a meritorious defense, his failure to appear was the result of excusable neglect under Civ.R. 60(B)(1) or (5), and the motion was timely filed. In view of our resolution of the first two assignments of error, we need not address this assignment of error. However, on remand, Kessler may make whatever arguments he deems necessary concerning relief from judgment under Civ.R. 60(B).

## VI. Conclusion

**{¶ 55}** The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.


Copies sent to:

Alexander W. Cloonan
R.C. Wiesenmayer
Hon. Dennis J. Adkins